No. 32,829

EFFIE ST. DENIS and ALICE BOBETT, *Appellees,* v. JORGEN K. JOHNSON, *Appellant.*

(57 P. 2d 70)

Opinion filed May 9, 1936.

*Arnold C. Todd, Julian E. Ralston, Ralph Gore* and *Kurt Riesen,* all of Wichita, for the appellant.

*John W. Adams, O. A. Keach, J. T. Rogers* and *James A. Conly,* all of Wichita, for the appellees.

The opinion of the court was delivered by

BURCH, C. J.: The action in the district court was instituted to contest two orders of the probate court, one refusing to admit to probate a will made in 1930 and the other admitting to probate a will made in 1919. The district court reversed the probate court. The beneficiary of the earlier will, who is also executor, appeals.

The will of 1919 was the joint will of J. K. Johnson and his wife, Maria Johnson. The will devised and bequeathed the property of each to the other. The will of 1930 was the separate will of Maria Johnson, which made certain specific bequests of personal property, devised one half of her estate to her husband, and devised the other half to two of her daughters. Maria Johnson died April 26, 1933. The surviving husband filed a cross-petition alleging the will of 1919 was contractual, and praying for relief accordingly. Relief was denied, and Johnson appeals.

J. K. Johnson and Maria Kelly were married in November, 1904. Maria Kelly was the widow of Edgar Kelly, deceased. She had three daughters, Effie, Alice and Ella, now Effie St. Denis, Alice Bobett and Ella Brummett. Effie and Alice were the plaintiffs in the present action.

Edgar Kelly died intestate, leaving an estate consisting of about 400 acres of land, on which there was a mortgage of $1,200, and some personal property. The estate was not probated, and the property descended, one half to the widow, and one half to the three daughters, subject to the mortgage on the land.

In 1904 J. K. Johnson was a bachelor, and was bridge and building supervisor for the Missouri Pacific Railroad Company, a position which he had held since 1896 and which he still holds. The extent of the property he possessed was not definitely shown, and the amount of his salary was not disclosed. It was not long, however, until he had furnished the money to buy the interests of the Kelly girls in their father's estate and to pay off the mortgage on the Kelly land.

Johnson met Maria Kelly in the fall of 1903, and, as indicated, they were married in the fall of 1904. He was 32 years old. Mrs. Kelly's age at the time of the marriage was not definitely established. Mrs. Kelly told Johnson she was 47. In an application for appointment of a guardian for his wife, to be noted later, Johnson said Mrs. Johnson was born in 1851. If so, she was 53 when they were married. In a communication dated April 29, 1932, and admitted in evidence as written and signed by Maria Johnson, she said she was then 79. If so, she was born in 1853, and was 51 when she married Johnson. Effie St. Denis testified her mother was 84 or 85 when she died. A neighbor said they called her 86. If so, she would have been 55, or 56, or 57, when she married Johnson. The court went one better, and found she was 58. If the union

were one between December and May, Mr. and Mrs. Johnson lived together until she died in 1933, and there is no evidence they did not live happily together, at least until 1930.

In 1925 Mrs. Johnson suffered an accident which rendered her quite helpless, and she declined physically until the time of her death. Part of her later affliction consisted of inability to talk so that she could be readily understood. After the accident Effie St. Denis, who had been married and divorced, came to the Johnson home and lived there until her mother's death, fulfilling all the functions of companion, chauffeur, servant and nurse.

In 1908 or 1909 the husband and wife made a joint will, which gave the daughters of Mrs. Johnson one dollar each, and then devised and bequeathed the property of each testator to the other. In 1919 the will of 1909 was missing, and the husband and wife made another joint will, as nearly as possible a duplicate of the first one. This will did not get lost, and is the will of 1919, referred to above as admitted to probate after Maria Johnson's death.

On June 30, 1930, while Mrs. Johnson was riding in an automobile with Effie St. Denis, she saw Johnson riding in an automobile with a woman. On July 3 Effie St. Denis took her mother to a lawyer's office and the lawyer prepared a will for Maria Johnson, which was duly executed later that day at her home, and which revoked the will of 1919. This is the will which the probate court refused to admit to probate. The district court found that Mrs. Johnson told the lawyer she was changing her will because she had seen Johnson with another woman.

The court admitted in evidence a copy of a letter written by Mrs. Johnson to her daughter, Alice, who lived in Fairfield, Ill. The letter stated, among other things, that Mrs Johnson had caught Johnson out with another woman, and that she had changed her will. The letter was dated July 8, and was mailed July 10. With great prudence and foresight, a photostatic copy of the letter was made. Later the letter was lost, and the copy was introduced in evidence.

Johnson testified the woman with whom he was riding had been doing his washing and cleaning. He went to her house for a suit of clothes he had left to be dry cleaned, got the suit, and then took the woman about nine blocks to the Missouri Pacific depot, where he left her, and he went on home. The testimony contradicted material portions of the letter. The court returned the following finding of fact:

"There was nothing wrong in the actions of J. K. Johnson with the woman that he was seen riding with, as she was his laundress and he was taking her to the Missouri Pacific station."

The mare's nest of catching Johnson with a woman was the sole occasion for the will of 1930, which was kept secret from Johnson until February, 1932.

The Johnsons were thrifty and accumulated some money, which was deposited in the First National Bank of Wichita on certificates of deposit in the name of Mrs. Johnson. On July 10, 1930, the day the letter to Alice was mailed, and a week after the new will was made, Effie St. Denis took her mother to the bank, and new certificates to the amount of $5,750 were issued, payable to "Maria Johnson, or Effie St. Denis, or Alice Bobett, or either, or the survivor." The next day, July 11, Doctor Burkhead, Mrs. Johnson's physician, called Dr. C. H. Curtis and they went to Mrs. Johnson's home to make a diagnosis and to determine Mrs. Johnson's mental condition. They reported she was of sound mind and memory.

Some matters occurring subsequent to the closely related events which have just been narrated may be mentioned.

In December, 1931, Johnson had Doctors Edgerton and Bishop examine his wife with respect to her mental condition. In their opinion she was, and for a long time had been, mentally incompetent. Effie St. Denis was present. After the examination she composed, from memory, fifty-two questions propounded to her mother by the doctors, and her mother's answers. The written document was interlarded with comment and description. Two examples follow:

"22. What day of the month is this? She writes, 4th. (It was the 11th.) Todd and Johnson laugh.

"23. What year is this? Writes, 1922. Todd and Johnson are doubled up in merriment. Standing up, towering over her the whole time of the questioning."

Effie St. Denis was a witness at the trial, and told how the document was prepared. After Doctors Edgerton and Bishop had testified, this document was admitted in evidence in rebuttal, over objection, and without the sanction of any known rule of evidence or trial practice.

On February 3, 1932, the sheriff of Sedgwick county served a notice on Johnson, signed by Mrs. Johnson, stating she had decided to and had revoked the will of 1919 and had made another will. This was the first information Johnson had of the will of 1930.

On February 9, 1932, Johnson made application to the probate

court for appointment of a guardian for his wife. After a hearing before a jury she was found to be feeble-minded and incapable of managing her affairs, and Johnson was appointed guardian. On appeal to the district court there was a hearing before a jury, and Mrs. Johnson was found to be feeble-minded and incapable of managing her affairs. An appeal to this court was dismissed after Mrs. Johnson's death.

In December, 1931, Johnson commenced an action, in the name of his wife, against Effie St. Denis to recover the certificates of deposit which had been issued on July 10, 1930. Later the action was dismissed by Johnson, as guardian, who had obtained possession of the certificates and had procured a reissue of them to himself, as guardian. After Mrs. Johnson's death Effie St. Denis and Alice Bobett commenced an action against Johnson to recover the certificates. After a trial the jury returned a verdict for Johnson and against the plaintiffs. One special finding of the jury was that on the 10th day of July, 1930, and a few days prior thereto, when arrangement was made to have the certificates of deposit issued to Mrs. Johnson, Effie St. Denis and Alice Bobett, or either, or the survivor, Mrs. Johnson did not understand the nature, extent and consequences of her act. Judgment was rendered for Johnson. An appeal was taken to this court, which this court subsequently dismissed.

At the conclusion of the hearing on the applications to probate the wills of 1919 and 1930 the probate court returned the following findings of fact:

"That prior to or at the time of the marriage of Maria Johnson unto J. K. Johnson they entered into an agreement to the effect that if the said J. K. Johnson would furnish the necessary money to pay off the mortgage upon the land, which constituted the estate of the said Kelly, and also to purchase the interest of the said daughters in the estate of their father, the said Kelly, that the said Maria Johnson and J. K. Johnson would get married and thereafter enter into a will giving to each other all of their respective properties in the event of death.

"That after the said Maria Johnson and J. K. Johnson were married and the said J. K. Johnson furnished unto Maria Johnson the money with which to satisfy the mortgage upon the aforesaid land and also to buy out the interest of the aforesaid daughters in the estate of their father, Maria Johnson and J. K. Johnson thereafter and on or about 1909 made and entered into a joint will wherein each devised and bequeathed unto the other, in the event of death, all of their respective properties.

"That in the year 1919 the will which the said Johnsons had made in 1909 was lost or destroyed, and because thereof and in order to carry out the agreement which they had made at or about the time of their marriage, they made another similar joint will, which will has ever since remained in existence and is the instrument dated November 3, 1919, now offered for probate. This will, as the former one, gives unto J. K. Johnson all of the property of the said Maria Johnson, save and except one dollar ($1) to each of Maria Johnson's daughters, to wit, Mrs. Ella Brummett, Mrs. Alice Bobett, and Mrs. Effie St. Denis."

The district court returned the following finding of fact:

"18. There was some evidence, introduced that prior to the marriage of Maria Kelley and J. K. Johnson they entered into a contract to make a joint will, but the evidence regarding this contract is not clear and convincing and the court does not find that there was such a contract."

It will be observed the court did not find a contract to make a joint will had not been made. All the court did was to find there was some evidence introduced concerning a contract to make a joint will which was not clear and convincing. Thereupon the attorneys for Johnson requested the court to make the finding specific by stating whether the court did not believe the witnesses, or whether the testimony was not of the quality required to prove such a contract. This the district court declined to do, and it becomes necessary for this court to examine the testimony offered in support of the contention the will of 1919 was contractual.

In the case of *Menke v. Duwe et al.*, 117 Kan. 207, 230 Pac. 1065, a paragraph of the syllabus reads:

"A testamentary instrument jointly executed by husband and wife, stated to be 'our last will and testament,' and containing reciprocal testamentary dispositions of the separate property of each, is not necessarily contractual in character, either as a matter of fact or as a matter of law." (Syl. ¶ 2.)

In that case the court had before it a will and extrinsic evidence. The will was not excluded from consideration in determining its nature and character, and the next paragraph of the syllabus reads:

"A will of the character indicated, and the extrinsic evidence, considered, and *held*, nonexistence of a contract between the devisors making the revocation by the wife after the husband's death wrongful, was proved."

In the case of *Lewis v. Lewis*, 104 Kan. 269, 178 Pac. 421, the court considered a joint will of husband and wife, in which each gave a life estate to the survivor, with remainder to children. In the opinion the court said:

"The defendant says that there was no evidence to show that T. W. Lewis

and Betsy A. Lewis ever entered into any contract to make the will, and that there was no finding of the court that such a contract was made. How could such a will be voluntarily executed if there was no agreement or understanding that·it would be made? The will itself, its terms, and its execution, are evidence that such a contract was made." (p. 273.)

The will of 1919 did not just happen to be as it was. It was a duplicate of a will made in 1909, which was lost. The conduct of husband and wife indicates they had a settled purpose that disposition of their property at death should be governed by will of a definite kind; and reassertion of the terms of the earlier will confirmed the evidence afforded by the instrument, that it was the product of contract. The finding of the district court ignored the two joint wills and what they indicated.

Because the will of 1919 was a duplicate of the will of 1909, the will of 1919 is to be fitted into the situation of the parties in 1909. On death of Edgar Kelly, Maria Kelly had a half interest in his estate, and her daughters owned the other half, all subject to a $1,200 mortgage. Maria Kelly married Johnson. Within six months after the marriage, Johnson had furnished the money to purchase the interests of Effie St. Denis and Alice Bobett. In October, 1905, he furnished the money to pay the mortgage, in the sum of $1,272. He later furnished the money to purchase the interest of Ella Brummett, her deed being dated January 18, 1908. The interests of the three daughters were conveyed, not to Johnson, but to their mother, who, after Johnson's expenditures, possessed the entire Kelly estate, free from incumbrance.

It would be idle to contend Johnson did what has been described without any agreement between himself and Maria Kelly. All that was done was manifestly done pursuant to a definite plan. As soon as might be after marriage, after purchase of the interests of the daughters, and after payment of the mortgage, Johnson and Mrs. Johnson executed a joint will, the last act essential to consummation of the plan.

Looking backward from the first will, which evidenced a contract, and which was confirmed by the second joint will, the circumstantial evidence of plan, including conduct of the parties, beginning with marriage and ending with will, is sufficiently clear and satisfying to warrant the findings of the probate court. It is quite apparent the district court did not consider the circumstantial evidence, concern-

ing which there is no dispute, which rendered definite the contract evidenced by the two joint wills.

Picking out a sentence occurring in an opinion of this court in which lack of proof of definite offer and acceptance was noted, plaintiffs say there must be proof of definite offer and acceptance to establish a contract. Such is not the law. In the opinion by former Chief Justice Johnston in the case of *Bichel v. Oliver*, 77 Kan. 696, 95 Pac. 396 (1908), it was said:

"An oral agreement that operates as a transfer of land must, of course, be made out by clear and satisfactory proof, but it is not essential that it be established by direct evidence. If the facts and circumstances brought out are such as to raise a convincing implication that the contract was made, and to satisfy the court of its terms, and that there would be no inequity in its enforcement, it is enough." (p. 700.)

This enunciation of principle has not since been departed from by this court, and is applicable here.

In 1917 Mrs. Maude L. White moved to the same block in Wichita in which the Johnson home was situated. Mrs. White became acquainted with Mrs. Johnson soon afterward. When Mrs. Johnson was burned in 1925, Mrs. White was the first woman to reach her. Mrs. White helped Mrs. Johnson into the house, called the doctor, and later went with Mrs. Johnson to the hospital. The two women would meet on the street, in the store, and Mrs. White was in Mrs. Johnson's home a number of times. Along in 1919 Mrs. White had a conversation with Mrs. Johnson on the sidewalk outside the Johnson home. Mrs. White testified:

"We stopped and were visiting and she said, 'Mrs. White, I want to ask you a question; you have been married before?' I said I had. She said, 'I would like to know how you and Mr. White have your business taken care of in case of death?' I said, 'Mrs. Johnson, we have a joint will' and she said, 'So have we.' I said, 'Mrs. Johnson, I don't know whether that will hold good in your case or not because you have children.' She said, 'Well, I will tell you,' she said, 'it is just the same as if we didn't have children, because Mr. Johnson and I made a contract before our marriage that we would be married and that these children would be paid off and then we would make our joint will and whatever was left at his death would be mine and at my death would be his; and this contract was carried out and those children have been paid off in full.' She said they had made their will."

Ella Brummett received nothing but a dollar under the will of 1919, and nothing but a dollar under the will of 1930. She testified as follows:

"I am a daughter of Maria Johnson. I was living in Ohio at the time my

mother married J. K. Johnson. I visited them in either 1907 or 1908 and next saw my mother in 1919. I had been living in Ohio. I came to Wichita in December of 1919 to make arrangements to buy some property on Riverside. I had a conversation with my mother with respect to a transaction she had had with Mr. Johnson. She told me of this transaction while we were sitting in the living room. She said she wanted to tell me something, and said, 'You know before Johnson and I was married, we made an agreement that if he would pay you girls off and pay the mortgage off, why we would make a joint will and if anything happened to him, I was to get what he had and if anything happened to me, that he was to get what I had.'

"She told me her will had disappeared and that she thought Effie had taken it but that it was not going to do Effie any good because she and Johnson had made another one just like it and put it where Effie couldn't get her hands on it.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The conversation I had with my mother in December, 1919, lasted about two or three hours; we were just talking like anyone would about a lot of things."

This is doubtless the evidence which the district court said was not clear and satisfactory. Why this evidence, considered alone, was not clear and satisfactory is not apparent, and looking at the finding as a whole, the court must have meant this testimony was not sufficiently clear and satisfactory to the court to base a finding of contract on the testimony. Otherwise the declination of the court to find a contract was purely arbitrary.

In considering the question whether a contract existed, the testimony of Mrs. White and Mrs. Brummett could not be ignored. The conversations which they related occurred in a perfectly natural way, one between neighbor and neighbor, and one between mother and daughter. There is no basis in the record for doubt that conversations did occur, which were remembered, and which were reported as the witnesses remembered them. Mrs. White did not mention payment of the mortgage as an element of the contract. Mrs. Brummett named all the elements of the contract. The veracity of the witnesses was not impeached in any way, and their testimony was entitled to consideration in connection with all the other evidence bearing on the subject of existence of contract.

If the testimony of Mrs. White and Mrs. Brummett be ignored entirely, the result is just the same. Without it, the will of 1919 was proved to be contractual, and there was no evidence to the contrary. The attorney who drew the wills of 1909 and 1919 testified Johnson and Mrs. Johnson did not tell him they had entered

into a contract for a will of the kind he prepared. Whatever they said or did not say, he prepared wills which the Johnsons executed, and which the evidence as a whole shows were contractual.

A matter of procedure necessitating Johnson's cross petition must be noted, which is a survival from the days when law developed through deductive logic, instead of the facts of experience. To be a will, the thing called a will had to be ambulatory during the lifetime of the testator. Therefore, it could be revoked. It could be revoked even although the testator was under contract which forbade revocation. Expressed bluntly, an irrevocable will was revocable. To prevent injustice consequent upon this anomaly, equity came to the rescue, and to state the matter bluntly, enforced the revoked will. This was done under the guise of enforcing the contract, and the beneficiary of the revoked will got just what the will gave him. So the matter stands today, and Johnson is entitled to what the will of 1919 gave him.

The probate court found Maria Johnson was not competent to make the will of 1930. The district court found to the contrary. The evidence will not be reviewed. Due execution of the will of 1930 was established, and the finding of the district court that the testatrix had capacity to make it will be accepted. In all other respects the judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for Johnson for title to and possession of all the property, real, personal and mixed, of which his wife died seized, on payment by him to the clerk of the district court of the sum of one dollar for Effie St. Denis, of the sum of one dollar for Alice Bobett, and of the sum of one dollar for Ella Brummett. The property which Johnson receives is charged with payment of all lawful debts owed by Maria Johnson at the time of her death. For the purpose of facilitating allowance and payment of debts and the closing of administration of the estate of Maria Johnson, the appointment by the probate court of J. K. Johnson as executor of the last will of Maria Johnson will stand.