No. 36,443

In the Matter of the Estate of Jessie Adkins, Deceased (BETTY JEAN HOUGH, CLIFFORD GENE HOUGH and CAROL GWEN HOUGH, *Appellants*, v. A. S. FOUNTAIN, C. B. FOUNTAIN, G. M. FOUNTAIN, L. F. FOUNTAIN, LULU POORMAN, ROCHELLE JUNE WEBER and EVELYN IRL WEBER, *Appellees*).

(167 P. 2d 618)

Opinion filed April 6, 1946.

*Max Wyman,* of Hutchinson, argued the cause, and *Erskine Wyman, Aaron Coleman* and *Fred Preble,* all of Hutchinson, were on the briefs for the appellants.

*H. R. Branine,* of Hutchinson, argued the cause, and *Walter F. Jones, C. E. Chalfant* and *J. Richards Hunter,* all of Hutchinson, were on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was a proceeding to probate what purported to be the separate will of Jessie Adkins, dated October 18, 1941. In the same proceeding what purported to be a joint will of E. L. and Jessie Adkins under date of October 31, 1939, was offered for probate as the will of Jessie Adkins. Objections and exceptions to probate of the separate will were filed and also proceedings asking that the joint will be probated as the will of Jessie Adkins and if it was not probated that it be enforced as a contract against the property of Jessie Adkins. All these matters were consolidated and after a hearing before the probate court what purported to be the second will of Jessie Adkins was admitted to probate. The parties who objected to the probate of this will and had offered the joint will appealed to the district court where the second will was admitted. The same parties have appealed.

The facts are substantially as follows: E. L. Adkins and Jessie Adkins were husband and wife. On October 31, 1939, they were living together and presented themselves to their lawyer who drew a will which was duly executed by them that day. It will be referred to herein as the joint will. It is headed "Last Will and Testament of E. L. and Jessie Adkins, Husband and Wife." Underneath the above appear the words "(Joint Will.)" It is as follows:

"In the Name of God, Amen, We, E. L. Adkins and Jessie Adkins, husband and wife, residing at Lerado, Reno County, Kansas, and both being of sound mind and memory and under no undue influence of any nature or kind, do hereby revoke all former wills by us made, or by either of us, and do make, publish and declare this to be our Joint Will and Testament, as follows:

"First: It is the Will of each that upon the death of either of us this Will shall be proved and probated under it that the just debts and obligations of the deceased be fully paid and discharged and upon the death of the survivor that the debts of the survivor be fully paid from our estates; and if it be necessary in either instance, that any personal property be reduced to cash, then we authorize the Executor so to do;

"Second: Subject to the above and foregoing, we give, bequeath and devise all the remaining estate of the one first deceased to the other as survivor, to have and to hold to the survivor during his or her lifetime, as it may be, with full power to collect, receive and expend rents, income and profits of every nature inuring to the estate of said deceased; and if, in any event, the income from all sources of said survivor be not sufficient for the survivor's needs to keep him or her in comfort and with reasonable luxuries, then the corpus of the estate may be disposed of, only so much thereof as necessary for said purpose; but the personal estate shall be used before any resort is had to the real estate and this power to dispose of any part of our estates for the support of the survivor shall not affect the fact that said estate remains only a life use and income as to the remaining estate;

"Third: Subject to the foregoing provisions, on the death of the said survivor, we give, bequeath and devise the remainder of our estates, as same may be, to our beloved daughter, Betty Jean Weber, to have and to hold all said estate and to receive the rents, income and profits from same until she shall attain the age of forty (40) years, provided she shall first use said rents, income and profits for the education of her children, and secondly, shall use same for her own use and enjoyment as she may see fit, all until the time she attains the age of forty years. It is our Will also that during this time, prior to said Betty Jean Weber, attaining the age of forty years, her children shall share with her, as may be necessary for their comfort and support in the way that she may wish them to do, in addition to their said educational uses, in the said income, rents and profits from said property. At the age of forty years, said Betty Jean Weber shall receive possession and control of all our remaining estate, as same may be at that time, and shall during the remainder of her lifetime use and enjoy same as she may need for herself and said children; but she shall not dispose of or mortgage or encumber in any way any of the real estate of said estates and at her death, we give, bequeath and devise said real estate to her children who may survive her, to be theirs absolutely; but if any child of hers shall be then deceased leaving children, the share that would have been such child's shall inure to the children of such deceased child of Betty Jean Weber. Upon the death of both of us making this Will, an Executor or Administrator shall be appointed who shall take charge of said estate administering same and close said estate, as the Law may provide, under the direction of the Court

in due time, and said Executor or Administrator shall become a Trustee upon the discharge of such Executor or Administrator and shall continue to direct and conserve the property of our estates, paying the income of every nature to said Betty Jean Weber under the terms of this will subject to any expenses or reasonable charges said Trustee may make; and at the time said Betty Jean Weber shall be forty (40) years of age, said Trustee shall deliver said estate to her as provided herein.

"FOURTH: The survivor of us shall serve without Bond as Executor hereof; but the Executor or Administrator appointed at the death of said survivor to carry out the further terms of this Will shall give good and sufficient Bond to be approved by the Court. Reasonable compensation shall be allowed to said Executor or Administrator. In the event that Betty Jean Weber is forty (40) years of age before both of us are deceased, then at the decease of the survivor of us, Betty Jean Weber shall have immediate possession of said estate, under the administration and payment of debts, as same may be, subject to the terms of this Will. Any of our personal estates remaining at the death of our said daughter, shall descend as provided for realty.

"FIFTH: We do each of us appoint the survivor of us to act as the Executor of this Will, and to have all the powers necessary to execute said Will under the direction of the Court.

"IN WITNESS OF all the foregoing, we have signed this our Joint will on this 31st day of October, 1939.

"E. L. Adkins

"Jessie Adkins

"The above instrument was at the date thereof signed, published and declared as and for their Joint Will by E. L. Adkins and Jessie Adkins, husband and wife, in the presence of us who at their request and in the presence of each other, have signed as witnesses to the signing of both said husband and wife."

E. L. Adkins died August 5, 1941. On the petition of Jessie Adkins the joint will was admitted to probate as the last will and testament of E. L. Adkins. She was appointed executrix, took possession of the property and accepted the income and benefits therefrom. She was still serving as executrix thereof on the day of her death, January 14, 1944, although one Fountain, her brother, had been appointed special administrator on account of her physical incapacity. On October 18, 1941, a little more than two months after the death of E. L. Adkins, Jessie Adkins executed another will. It read as follows:

"I, Jessie Adkins, of Reno County, Kansas, being of sound mind and disposing memory and under no undue influence of any kind or character, do hereby revoke any former wills by me made and do now make, publish and declare this my Last Will and Testament in the manner following:

"FIRST: . . .

"SECOND: . . .

"THIRD: The rest, residue and remainder of my Estate I give, bequeath

and devise to my two grandchildren, children of Betty Jean Weber, now named Betty Jean Hough, viz., Rochelle Weber and Evelyn Irl Weber, share and share alike, to be theirs absolutely, provided that inasmuch as said two children may not have attained full age at the time of closing my Estate, I nominate, constitute and appoint as and for a Trustee for the portion of my Estate given to them, Harold Fountain who shall receive said Estates from my Executor and manage same for my said grandchildren until they reach full age, . . .; in the event of the death of either Rochelle Weber or Evelyn Irl Weber, my said grandchildren, prior to receiving their portion of my Estate at the age of twenty-one years, the share which would have belonged to said grandchild, or grandchildren, I give, bequeath and devise to my brothers and sister now surviving, share and share alike, equally; but if either of my brothers or my sister shall not survive me, then if said deceased one leave no children, his or her share shall inure to my surviving brothers and sister, equally or the children of any prior deceased brother or sister, equally, but this is also subject to this provision; that if any brother or sister shall not survive me and leave children, the children shall inherit the parent's portion;

"FOURTH: I nominate, constitute and appoint Harold Fountain as and for the Executor of this my Last Will and Testament to serve with reasonable Bond and with powers necessary for or incident to the carrying out of this will.

"IN TESTIMONY of all the foregoing, I have signed this 18th day of October, 1941.

"Jessie Adkins

"The above instrument was at the date thereof signed, published and declared as and for her Last Will and Testament by Jessie Adkins in the presence of us, who at her request and in her presence and in the presence of each other have signed as witnesses thereto: The above word 'equally' used twice has been heretofore indented."

It will be noted here that at the time of making the joint will the only child of Jessie Adkins and E. L. Adkins was a daughter named Betty Jean. At that time she was married. Her name was Betty Jean Weber. She had two children, Rochelle June Weber and Evelyn Irl Weber. At the time the separate will was made she had married again. Her name was Hough and she had two more children, Clifford Gene Hough and Carol Gwen Hough.

It will be noted the joint will of E. L. and Jessie Adkins provided that the survivor be given a life estate in the property of each and an executor or administrator should be appointed who should become a trustee at the closing of the estate to manage the property until Betty Jean should attain the age of forty. The will also provided that the income should be paid to her and for the benefit of her children and on attaining the age of forty Betty should come into possession of and have the full benefit of a life estate

and on her death the property should go to her children absolutely.

Under the separate will of Jessie Adkins of October 18, 1941, the property went to Rochelle June Weber and Evelyn Irl Weber, share and share alike, providing that if either one should die before becoming twenty-one years of age the share which would have gone to that child should go to the brothers and sisters of Jessie Adkins, share and share alike.

Jessie Adkins died January 14, 1944. Two of her brothers filed a petition for the probate of her separate will. Betty Jean filed her petition for the probate of the joint will as the last will and testament of Jessie Adkins. Objections to the probate of the second will were filed by Betty Jean and the two children asking that the joint will be probated and if not probated that Betty and her children, living and prospective, be adjudged the owners of all the real estate and personal property owned by E. L. Adkins or Jessie Adkins at the time of their respective deaths, in accordance with the terms and provisions of the joint will described and that the terms of the joint will be enforced against the estates of E. L. Adkins and Jessie Adkins, as a contract, and that all persons claiming under the purported will of October 18, 1941, be barred from any right or interest in any of the real estate and personal property owned by decedents, or either of them, at the time of their respective deaths, and that Betty and her children have such other and further relief as might be just and equitable. A guardian *ad litem* was appointed for the two minors, Clifford Gene Hough and Carol Gwen Hough, and also to represent the interests of the unborn children of Betty Jean Hough. Another guardian *ad litem* was appointed to represent the interests of Rochelle June Weber and Evelyn Irl Weber. These matters were all consolidated and heard together. The probate court admitted the separate will to probate and refused to admit the joint will or to enforce it as a contract. Appeal was taken to the district court. By stipulation the district court read the transcript of the evidence that was considered by the probate court, together with all the files of that court. Following extended findings of fact the court made conclusions of law as follows:

"One. That the last will of Jessie Adkins dated October 18, 1941, should be admitted to probate.

"Two. That the joint will of E. L. Adkins and Jessie Adkins, dated October 31, 1939, was not executed in pursuance of any agreement between the parties to dispose of their respective property as therein provided or not to

revoke said wills or to maintain and not revoke them after the death of one of the parties, and so the joint will dated October 31, 1939, was revoked as the will of Jessie Adkins by her will dated October 18, 1941."

The court entered judgment affirming the judgment of the probate court ordering that the will of Jessie Adkins under date of October 18, 1941, be admitted to probate as her last will and testament and generally in accordance with the conclusions of law. From that judgment this appeal is taken.

The appellants argue that when Mrs. Adkins joined in the will with her husband and later at his death became executrix under its terms and accepted benefits under it she was estopped from revoking that will. They also argue that the joint will was contractual and its terms should be enforced as a contract as to any property of Mrs. Adkins.

Appellants cite and in a large measure rely on what we said in *Lewis v. Lewis*, 104 Kan. 269, 178 Pac. 421. In *Lewis v. Lewis*, supra, the husband and wife made a will in which they both joined and by which they gave to the survivor a life estate in the property of the deceased, and provided that on the death of the survivor the property of both should go to certain named beneficiaries, these beneficiaries being the same no matter which party survived. On the death of the wife the husband took possession of the property and exercised dominion over it. Subsequent to the death of his first wife he again married and thereafter died. After the joint will was probated the second wife was cited to appear and make her election as to whether she would take under the will or under the laws of descent and distribution. She elected to take under the laws of descent and distribution. The court found the husband had stated he and his first wife had made provision for their children in their will but had also stated that if his second wife came into his home as his wife she would enjoy all the rights and privileges of his first wife. The action was brought by the children of Lewis by his first wife to enforce the terms of the joint will. The defendant, that is, the second wife, argued first that the will was against public policy and void and that she inherited Lewis' property as his wife in spite of the will. We held first that the joint and mutual will was not against public policy. The next argument of the second wife was that the will as far as the survivor was concerned was revoked by his subsequent marriage to her and that if the will stood the statutory provision for her as the wife of Lewis was of no avail. Our language in dealing with that question is as follows:

"All the supporting argument of the defendant fails, and she is left with the argument that the second marriage of T. W. Lewis, without any other act, revoked his will. It is not necessary to decide that question at this time; but for the purpose of argument, it may be conceded that marriage does revoke a will previously made, where it can be revoked. If it cannot be revoked, it must be because the instrument partakes of the nature of both a will and a contract. The defendant says that there was no evidence to show that T. W. Lewis and Betsy A. Lewis ever entered into any contract to make the will, and that there was no finding of the court that such a contract was made. How could such a will be voluntarily executed if there was no agreement or understanding that it would be made? The will itself, its terms, and its execution, are evidence that such a contract was made." (p. 273.)

It will be noted we said that if such a will could not be revoked it was because it partook of the nature of both a will and a contract. We also dealt with the question of whether there had been a contract by asking the question: "How could such a will be voluntarily executed if there was no agreement or understanding that it would be made? The will itself, its terms, and its execution, are evidence that such a contract was made." Upon that language the appellants base their argument first that the mere existence of a joint and mutual will is evidence that it was entered into as a result of a contract to make such a will and further that once such a will was made as a result of a contract it cannot be revoked.

Appellees cite and in a large measure rely on *Menke v. Duwe et al.*, 117 Kan. 207, 230 Pac. 1065. On account of the emphasis that is placed upon the opinion in that case by appellees we shall examine it critically. The action was by a widow who had executed with her husband what the record referred to as a joint and mutual will to secure her rights under the law as sole heir of her husband notwithstanding the will. The facts were that Menke and his wife were both elderly people. A lawyer was brought from Iowa to prepare the will of Mr. Menke. After some talk with Mr. and Mrs. Menke and an examination of the authorities he advised them it would be necessary for Mrs. Menke to either join in the will of her husband or consent to his making the will. Otherwise she would inherit one-half of his estate at his death regardless of the will. The court found that following this she did join in the will which was prepared. This will left her a life estate in her husband's property and provided that on her death it should go in the main to his relatives. After the death of her husband she filed an election to take under the will but within a day or two learned for the first time that under it she did not receive her

share of her husband's property but only a life estate therein. She immediately began proceedings to obtain her rights irrespective of the will. The court found that her signature to the will was given under the impression that it was necessary for her to consent to her husband willing one-half of his property to his relatives and was not given understandingly; that at the time she executed the instrument she did not understand the nature of it nor that it affected her property. The trial court concluded as a matter of law that the will was void and of no effect and should be vacated. It is strange the case of *Lewis v. Lewis,* supra, was not discussed in the opinion although it had been decided some years previously. We said "There remains the question whether the will evidences a contract between the parties which precludes Mrs. Menke from revoking it as her will and from electing to take under the law instead of under the instrument as her husband's will." We then quoted from a statement by Lord Chancellor Camden in the case of *Dufour v. Pereira,* 1 Dickens 419, which held that a joint or mutual will was irrevocable and from the case of *Lord Walpole v. Lord Orford,* 3 Vesey Jr. 402, decided in 1797, which differed somewhat from the former holding. The matter with which we are concerned, however, is as follows: Mr. Justice Burch, speaking for the court, said:

"Disposition of property by will is a proper subject of contract. If the contract be in substance or effect not to revoke a will, the will as a will is nevertheless revocable, without notice to anybody. It cannot then be probated as the will of the person revoking it and, if the revocation be by means of a second will, the second will is probatable as the will of the testator. The revocation, however, breaches the contract, and the contract is enforcible in equity against the estate of the testator. A single instrument may have a double aspect—a will contractual in character, or a contract testamentary in character. As will it is revocable. As contract it is enforcible, if broken by revocation as a will. Unless there be fraud, or a contract broken by revocation, there is nothing which equity may use as a basis of redress for revocation, no matter what the form of the revoked will, whether described as joint, or joint and mutual or otherwise." (p. 216.)

Critically analyzed, the opinion in the case of *Menke v. Duwe et al.,* supra, simply established that equity will not permit the mere fact that one testator joined in an instrument with another to bring about the inequitable result of perpetrating fraud upon one of the testators or parties to the joint and mutual will.

As the joint will now before us was finally drawn and executed it stated a clear and unambiguous intention on the part of each

party to leave a life estate in all his or her property to the survivor. There can be no doubt about that. The language by which the instrument left all the property of each of them that should remain after the death of the survivor to Betty Jean with certain restrictions is just as clear and unambiguous. The language of the will itself leaves no room for construction nor need for evidence as to the intention of the parties. On its face it showed that it was contractual.

The rule stated in 43 A. L. R. 1028 is as follows:

"But the terms of a joint will, or the circumstances under which it was executed, may show the existence of a contract, directly or by inference, so that equity will enforce its provisions in a proper case."

We have examined the authorities cited there. They are from many jurisdictions, are well considered and support the rule.

This conclusion requires a reversal of this judgment.

There are other matters, however, which demand our attention.

We now consider the effect of the new probate code on the judgment in this case. It will be noted that the cases we have discussed were suits in equity of one sort or another brought in the district court. The proceedings we are now considering were originally all had in the probate court. That was the proper tribunal. See *Behee v. Beem,* 156 Kan. 115, 131 P. 2d 675; *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d 438; *Dixon v. Fluker,* 155 Kan. 399, 125 P. 2d 364; *Swisher v. Bouse,* 155 Kan. 797, 130 P. 2d 565, and *Yeager v. Yeager,* 155 Kan. 734, 129 P. 2d 242.

G. S. 1943 Supp. 59-2225 provides as follows:

"If, after a petition for the probate of a will has been filed, another instrument in writing purporting to be the last will or codicil shall be presented, proceedings shall be had for the probate thereof and thereupon the hearing on the petition theretofore filed shall be adjourned to the time fixed for the hearing of the subsequent petition. At such time proof shall be had upon all of such wills, codicils, and all matters pertaining thereto, and the court shall determine which of such instruments, if any, should be allowed as the last will."

These proceedings were had pursuant to that section. That is, the will of October 18, 1941, was filed for probate. Then Betty Jean filed the joint will for probate, also her objections to the probate of the last drawn will and a request that the joint will be enforced as a contract against the property of Doctor Adkins. These things were all set down for hearing together, with the result we

have already discussed. The question whether or not the first will should be enforced as a contract is an equity question. Probate courts now have equity powers. See G. S. 1943 Supp. 59-301, subsection 12, also authorities heretofore cited on the question of jurisdiction of probate courts to enforce oral contracts to devise real estate. The question arises over what should be the order of this court since we are holding that the joint will is contractual and should be enforced as a contract. The section of the statute to which we have referred, G. S. 1943 Supp. 59-2225, provides that the probate courts shall determine which of such instruments, if any, should be allowed as the last will. We have here two wills presented to the probate court and we also have the matter of the enforcement of the one will as a contract. The statute also says:

"Proof shall be had upon all of such wills, codicils, and all matters pertaining thereto."

There is some suggestion that the order of this court should be that in such a case the only action the probate court has jurisdiction to take is to admit one or the other of the wills to probate. We cannot agree with that argument, however. The probate court does not only have the situation in this case of determining under the statute which of the wills is the last will; it also has the matter of determining whether or not the first will should be enforced as a contract. This opinion has discussed several authorities where we have held that in such a case the last will was entitled to probate as a will but that no one takes anything under it because the property has already been disposed of by the first will which should be enforced as a contract. As was pointed out in *St. Denis v. Johnson,* 143 Kan. 955, 57 P. 2d 70, this is an anomalous situation but it is too well grounded in our authorities for us to strike it down without specific direction to do so from the legislature. To hold that there is nothing for the probate court to do but decide which one of the wills should be admitted to probate would make it impossible for the probate court to deal with a situation where the later will only impinged in part on the will that was being enforced as a contract. See *Nelson v. Schoonover,* 89 Kan. 388, 131 Pac. 147.

The judgment of the trial court is reversed with directions to order the probate court to admit the last will, that is, the will of October 18, 1941, to probate and to direct the probate court to enforce the will of October 31, 1939, as a contract.

HARVEY, C. J. (dissenting in part): My view is that the will of E. L. Adkins and Jessie Adkins of 1939 is not a contractual will; that it contains only provisions which are common in a joint and mutual will, and that after the death of E. L. Adkins, Jessie Adkins could make a valid new will disposing of her separate estate. Assuming that will was contractual in its provisions, as the court's opinion holds, I concur in the ultimate disposition made of the case.

WEDELL, J. (concurring in part and dissenting in part): I concur in the conclusion that the first executed will was not only a joint will but was contractual in character and that the estate must be administered and settled pursuant to its provisions. I do not agree that under the new probate code the latter inconsistent and invalid will should also be admitted to probate.

All the parties agree the two wills are inconsistent in their disposition of the property involved. It follows only one of the instruments can stand as the last will and testament. We have concluded that will is the joint and contractual will.

Did the legislature by the enactment of the new code intend the later will, although wholly invalid, should also be admitted to probate? I do not think so. Under the new code a "will contest action" as such is unknown. Whatever the objection or defense to a will may be it is now asserted by opposition to its probate. The proceeding in reality is a contest of probate. In harmony with these fundamental changes under the new code the legislature enacted G. S. 1943 Supp. 59-2225 to cover the precise situation now before us relative to the probate of one of the two instruments involved. The statute is unambiguous. It clearly directs the procedure for determining which of the two instruments shall be allowed as the last will. It reads:

"If, after a petition for the probate of a will has been filed, another instrument in writing purporting to be the last will or codicil shall be presented, proceedings shall be had for the probate thereof and thereupon the hearing on the petition theretofore filed shall be adjourned to the time fixed for the hearing of the subsequent petition. At such time proof shall be had upon all of such wills, codicils, and all matters pertaining thereto, *and the court shall determine which of such instruments, if any, should be allowed as the last will.*"

Had the legislature intended both instruments, each executed in conformity with the legal formalities of a will, should be admitted to probate there would have been no purpose whatever for adjourn-

ing the hearing on the probate of the will first referred to in the statute. Nor would there have been any object in requiring the court at the adjourned hearing, when it is directed to hear all matters pertaining to all wills, to "determine *which of such instruments, if any, should be allowed as the last will.*"

Cases may well arise in which various wills operate on wholly separate and distinct portions of a decedent's estate. Such wills are in nowise inconsistent and each of them clearly would be entitled to probate. That, however, is not this case. I think the facts here bring the instant case clearly within the provisions of G. S. 1943 Supp. 59-2225. That being true, the statute should be followed. Where, as here, a statute is clear we need not inquire into reasons for its enactment. If, however, we were inclined to make such inquiry numerous practical reasons would at once suggest themselves to the bench and bar for not probating instruments and for not encumbering the record with instruments under which an estate is not being administered and under which no final settlement and distribution can be made.

HOCH, J., joins in the foregoing opinion by Mr. Justice Wedell.

SMITH, J. (dissenting): I find myself unable to agree with the opinion of the majority. As I see it, the majority opinion fails to take proper note of the distinction between the will and the contract, of which the will was the result. As I read *Lewis v. Lewis,* 104 Kan. 269, 178 Pac. 421; *Nelson v. Schoonover,* 89 Kan. 388, 392, 131 Pac. 147; *Baker v. Syfritt,* 147 Iowa 49, 125 N. W. 998; *Bower v. Daniel,* 198 Mo. 289, 95 S. W. 347; *Wanger v. Marr,* 257 Mo. 482, 165 S. W. 1027; *Menke v. Duwe et al.,* 117 Kan. 207, 217, 230 Pac. 1065; *Frontier Lodge v. Wilson,* 139 Kan. 75, 30 P. 2d 307; *St. Denis v. Johnson,* 143 Kan. 955, 57 P. 2d 70; *West v. Sims,* 153 Kan. 248, 109 P. 2d 479, and *Warwick v. Zimmerman,* 126 Kan. 619, 270 Pac. 612, they all lay down the principle that the will is one entity and the contract another.

This case was tried in probate court upon that theory. The lawyer who drew the will testified, amongst other things, as follows:

"Q. Was there anything said as to whether or not the survivor of them could revoke the will or would have the right to revoke the will; was that discussed in any way? A. Well, I don't think that the question of revoking the will was discussed at all, but I did say that the survivor could change, so far as her property was concerned in case it didn't work well.

"Q. Or in the case, or if the survivor were he, he could make the change? A. Whichever one was the survivor, if the plan didn't work well."

The court made one finding as follows:

"That on October 31, 1939, Dr. E. L. Adkins and Jessie Adkins, his wife, came to the office of Mr. Frank U. Russell, an attorney, and stated that they desired to make their wills. That after a general discussion of the desires of the parties as to the disposition of their property, the attorney suggested a joint will. He explained to them that this will would bind the property of the one who died first and would be the will of the one who died first, and the survivor could be the executor or executrix. That there was discussion as to the ability of Betty Weber to manage the property, and it was stated that she was not capable of handling the property now, and after some discussion they decided that it should not be turned over to her completely until she was forty years of age. That it was stated by the attorney that the survivor could change the arrangement so far as her property was concerned in case it did not work well. That after the discussion and consideration Dr. Adkins agreed that that would suit him and Mrs. Adkins said that she would join in such a will, and after both had agreed in that manner the will was prepared and duly executed."

Every day courts pass on the question of whether or not there was an oral contract to make the will as alleged. Sometimes the courts find that an oral contract was made; sometimes to the contrary. The trial court passed on that question here and found that no such contract was made. All the cases I have examined hold the irrevocability of a joint and mutual will as to the survivor depends upon the equitable doctrine that a contract to make the will may be enforced. It seems to me that unless this doctrine is to be stricken down this judgment should be affirmed.