No. 38,824

Lee R. Eikmeier, *Appellee,* v. Fred Eikmeier and Mary A. Eikmeier, *Appellants.*

(254 P. 2d 236)

Opinion filed March 7, 1953.

*Morgan Wright,* of Larned, argued the cause, and *Roscoe E. Peterson* and *Russell L. Strobel,* both of Larned, were with him on the briefs for the appellants.

*Glee S. Smith,* of Larned argued the cause, and *James R. Boyd* and *Vincent G. Fleming,* both of Larned, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Price, J.: This was an action by which plaintiff sought to invoke the equitable jurisdiction of the court to define and protect his rights as a third party beneficiary of an alleged agreement and contract between his parents, one of whom is now deceased,

evidenced by their mutual and reciprocal wills. Judgment was for plaintiff and defendants have appealed.

The physical facts are not in dispute and are as follow:

Fred and Mary D. Eikmeier, husband and wife, were pioneer residents of Pawnee County. They were the parents of three children, Lee, plaintiff herein, Paul and Esther, who in 1944 were 45, 40 and 37 years of age, respectively. Fred and Mary D. were 69 years of age. Mary D. was the owner of twelve quarter sections of land, and Fred owned two quarter sections, all in Pawnee County. The real estate in controversy is referred to as the northwest quarter of section 19, and it was owned by Fred.

In 1944 Mary D., joined by Fred, deeded a quarter section of her land to each of the three children. In 1945 she, joined by Fred, again deeded a quarter section of her land to each of the three children. At least some of the foregoing deeds reserved certain mineral rights to the grantors. In 1946 she, joined by Fred, again deeded certain of her lands to her children, Lee and Esther each receiving a quarter section and Paul receiving an eighty-acre tract. In 1946 Fred, joined by his wife Mary D., deeded a quarter section of land to Paul. Following this latter conveyance by Fred he then, in his own right, owned only the quarter section now in controversy. In each of the 1946 conveyances Fred and Mary D. expressly reserved full life estates in favor of themselves and the survivor of them.

In 1948 Fred and Mary D. concurrently executed separate wills which were prepared by an attorney in Larned. Mary D.'s will gave Fred a life estate in her property, and after his death it was to pass to their three children absolutely. We are not concerned with what particular tract each child was to receive after the expiration of Fred's life estate. Fred's will gave Mary D. a life estate in the quarter section still owned by him, being the tract in controversy, and provided that after the expiration of her life estate it should pass to Lee, the plaintiff, absolutely. Another provision of Fred's will gave all the rest and residue of his estate to the three children, share and share alike. Each of the testators consented in writing to the will of the other. As heretofore stated, these wills were separate instruments. Neither contained any reference to the other, and neither contained any language with reference to their being contractual in nature.

In July, 1949, Fred and Mary D. went to Kinsley at which time

and place they concurrently executed separate wills which were prepared by an attorney of that city. Each revoked all former wills made by each party. With the exception of certain changes and modifications, not material for our purposes, the general plan contained in the 1948 wills was contained in the 1949 wills, that is— Fred was to take a life estate in Mary D.'s property, following which it was to go to their children, and under Fred's will Mary D. was given a life estate in the tract in controversy, following which it was to go to Lee. As was the case with the earlier wills, each of these 1949 wills was a separate instrument. Each spouse consented in writing to the will of the other. Neither will contained any reference to the other, and neither contained any language to the effect that they were contractual in nature.

On February 28, 1950, Mary D. died, and shortly thereafter her 1949 will was admitted to probate. No question is raised as to its validity.

On October 5, 1950, Fred, who was then seventy-five years of age, married Mary A. _____, after an acquaintanceship, we are told, of approximately one month. On the same day, but after their marriage, Fred executed a warranty deed conveying to Mary A. the quarter section of land in controversy, reserving to himself a life estate. This deed was prepared by the Kinsley attorney who prepared the 1949 wills. There was no reference in the deed to the fact the property conveyed therein was the same property devised to Lee in Fred's 1949 will, which stood unrevoked. The consideration for the deed was listed as ". . . in consideration of the sum of One Dollar, love and effection and no other money consideration." The deed was recorded the same day.

In the spring of 1951 Lee commenced this action against his father, Fred, and his stepmother, Mary A.

The amended petition, after a recital of the execution of the deeds in 1944, 1945 and 1946, to the three children, including plaintiff, was drawn on the theory that those conveyances were made as a result of studied and deliberate estate planning by the parents and their verbal agreement to dispose of their property to their children in as nearly equal shares as possible; that in such agreement it was mutually understood and agreed that plaintiff ultimately was to receive the northwest quarter of section 19 (the tract in controversy), all of which culminated in the execution by Fred of his will of July, 1949, by the provisions of which plaintiff was devised an absolute

vested remainder in such tract. Then follow allegations of full performance on the part of both Fred and Mary D., evidenced by the execution of their wills of July, 1949, and her subsequent death in February, 1950, leaving her will in full force and effect, and—

"X.

That by reason of all of the foregoing, the executory contract between Mary D. Eikmeier and defendant, Fred Eikmeier, has become executed and irrevocable as to every part thereof, and specifically that provision whereby said defendant, Fred Eikmeir, agreed to devise the said Northwest Quarter (NW¼) of Section Nineteen (19), Township Twenty-two (22) South, Range Seventeen (17) West, unto plaintiff, Lee R. Eikmeir, and plaintiff is entitled to specific performance of such contract;"

Following this are allegations reciting the marriage of Fred and Mary A.; the execution and delivery of the deed to Mary A.; that her claimed rights, title and interest in and to the tract in question are inferior and subject to plaintiff's prior valid and vested rights as beneficiary of the contract and agreement between Fred and Mary D., and that plaintiff has no adequate remedy at law against the anticipatory breach of contract by Fred and is entitled to equitable protection.

The prayer is for a judgment and decree defining and establishing plaintiff's rights in and to the tract in question as beneficiary of the contract and agreement between his parents; cancelling or reforming the deed from Fred to Mary A.; quieting the title and interest of plaintiff against the defendant Mary A.; decreeing specific performance of the contract and agreement between Fred and Mary D. for the distribution of their estates; enjoining Fred and Mary A. from setting up or claiming any right, title or interest in the property adverse to plaintiff's rights, and for such other and further relief as to the court may seem just and equitable.

In their answer defendants specifically deny that Fred and Mary D. made the contract and agreement relied upon by plaintiff whereby Fred was bound to give or devise to plaintiff the tract in controversy.

The reply, after denying certain allegations of the answer, alleges that on the date of execution of the deed by Fred to Mary A. plaintiff was in the actual possession of the real estate in question; that such possession by him constituted notice to and put defendant Mary A. upon inquiry as to the right, title or interest of plaintiff, but that notwithstanding such fact she obtained the deed and filed the

same for record, all without making inquiry as to the rights and claims of plaintiff and the rights and obligations of Fred.

Upon the issues thus joined the parties proceeded to trial by the court, and at the conclusion thereof the court made extensive conclusions of fact and of law as to those matters in dispute and rendered judgment in favor of plaintiff. The findings and conclusions are as follow:

### "FINDING ONE (1)

"The defendant, Fred Eikmeier, and his wife, Mary D. Eikmeier, in the year of 1944, had three children. One of whom was the plaintiff, Lee R. Eikmeier. They were the owners of considerable real estate in Pawnee County. The title to some of this real estate was in the name of Fred Eikmeier, and the title to some of the real estate was in the name of Mary D. Eikmeier. They verbally agreed to make gifts, in the years of 1944, 1945, and 1946 to their children, by deeds, of some of this real estate. They verbally agreed in the years of 1948 and 1949 to make testamentary legacies and devises of some of this real estate to their children. It was their desire that each child should receive an equal share in their real estate.

"In accordance with the above agreements, in the years of 1944, 1945 and 1946, Fred Eikmeier and Mary D. Eikmeier made and executed to each of their children deeds to certain quarters of their real estate. The title to part of this real estate was in the name of Fred Eikmeier, and the title to part of the real estate was in the name of Mary D. Eikmeier. Before executing the deeds, they discussed the matter with each of their children as to whether or not, they were making an equitable distribution. The deeds were made, signed, and acknowledged at the same time.

"In accordance with the above agreements Fred Eikmeier and Mary D. Eikmeier in the years of 1948 and 1949 devised and bequeathed to each of their children certain quarters of their real estate. The title to part of this real estate was in the name of Fred Eikmeier, and the title to part of this real estate was in the name of Mary D. Eikmeier. Each made a separate will. The parties were both present during the preparing of the wills. Each consented to the will of the other. It was the intention of the parties that by a combination of the two wills, the devise to their children would be equal. Before making the wills, they discussed with each of their children as to whether or not they were making an equal distribution of their real estate.

### "FINDING TWO (2)

"Mary D. Eikmeier died on February 28, 1950. At the time of her death both wills made in 1949 were in full force and effect and had not been revoked. The will of Mary D. Eikmeier was admitted to probate by the Probate Court of Pawnee County. On the 5th day of October, 1950, the defendant, Fred Eikmeier married the defendant Mary A. Eikmeier. On the same date, but after the marriage, the defendant Fred Eikmeier signed, acknowledged, and delivered to Mary A. Eikmeier, wife of the grantor, a deed to the Northwest Quarter of Section 19, Township 22, Range 17, West of the 6th P. M., in Pawnee County. The consideration as stated in the deed is 'One Dollar

($1.00), love and affection and no other money consideration.' The defendant Mary A. Eikmeier at the time she received this deed knew that Fred Eikmeier had, on the 30th day of July, 1949, devised this quarter of land to the plaintiff. At the time of the execution of this deed the plaintiff was in possession of this real estate."

"Conclusions of Law

"1.

"There existed between Fred Eikmeier and Mary D. Eikmeier, husband and wife, at or prior to the time of the making of the wills in 1948 and again in 1949 an agreement as follows:

A. Each agreed to make a will at the same time the other one was making a will.

B. Each agreed to devise to the other a life estate in his or her real estate.

C. Each agreed to retain a life estate in his or her real estate.

D. Each agreed to consent to the will of the other.

E. Each agreed to devise to their children certain real estate, so that by a combination of the two wills, each of their three children would receive an equal share in their real estate.

"The wills of Fred Eikmeier and Mary D. Eikmeier were made as a result of the above joint covenants. Each will was made in consideration of the making of the other will. The devises in each will were made in consideration of the devises in the other will. The wills were, therefore irrevocable except by consent of both parties. It would be inequitable to permit Fred Eikmeier to accept the benefits of Mary D. Eikmeier's will and then revoke his will. The plaintiff is entitled to a decree of court protecting his rights with respect to the real estate."

Defendants' motions to set aside certain findings and conclusions and to substitute therefor findings and conclusions favorable to them, and for a new trial, were overruled.

The journal entry of judgment recites:

". . . that plaintiff is entitled to judgment and decree protecting and establishing his right, title and interest in and to the Northwest Quarter of Section Nineteen (19), . . . same being the right to be devised said real estate by the last will and testament of the defendant, Fred Eikmeier; that the deed of the defendant, Fred Eikmeier, to the defendant, Mary A. Eikmeier, dated October 5, 1950, . . . purporting to convey an absolute estate in and to said Northwest Quarter of Section 19, should be, and the same is hereby cancelled, set aside and held for naught; and that the defendants, and each of them, be forever barred and enjoined from setting up or claiming any right, title or interest in and to said real estate or any part thereof, adverse to the right of plaintiff as defined and established by this Court in its findings of fact and conclusions of law; . . ."

In this court defendants' contentions may be summarized as: (1) The court erred in admitting parol evidence as to the existence and terms of the contract claimed to have been made by Fred and Mary

D. prior to or contemporaneously with the execution of their 1949 wills; (2) such testamentary agreement, if in fact any was made, did not amount to an agreement by Fred and Mary D. that each was to retain only a life estate in his or her own real estate; (3) plaintiff's action is barred by the statute of frauds; (4) the court erred in restricting the cross-examination of plaintiff, and (5) the court erred in its findings and conclusions.

With respect to their first contention defendants argue that a will and the consent thereto constitute a written contract, the subject matter thereof being the statutory rights otherwise assured a surviving spouse and the provisions benefiting the consenting spouse in lieu thereof; that such contract contained in each of the two wills is unambiguous and complete in and of itself, and under the parol evidence rule could not be altered or varied.

This contention cannot be sustained. The rule contended for has no application to the question presented. The evidence was offered and admitted, not to vary or in any way alter the provisions of the wills or the consents, but to prove the alleged contract and that the wills and consents were executed pursuant to such contract. In 57 Am. Jur., Wills, § 726, p. 493, the general rule is stated:

"Extrinsic evidence is admissible in connection with the instruments themselves to show that wills which are reciprocal in their bequests were executed in pursuance of an agreement between the testators, notwithstanding the absence of recitals in the wills designating such an agreement. . . . The rule that parol evidence is never admissible to change or vary the terms of an unambiguous will does not render inadmissible extrinsic evidence that a will was executed pursuant to a compact with another person for the execution of wills bequeathing the property to the survivor for life and providing that certain third persons should take on the death of the survivor."

See also annotation at 169 A. L. R. 63.

And neither is there substantial merit to defendants' fourth contention, that the court erroneously restricted the cross-examination of plaintiff. The questions to which objections were sustained, while perhaps going to the matter of interest and alleged inconsistent conduct on the part of plaintiff, were immaterial on the real question at issue—the proof of the agreement and contract between Fred and Mary D. The court did not abuse its wide discretion in such matters by its ruling.

We pass now to defendants' contention that the alleged contract and agreement relied on by plaintiff, being oral and pertaining to the transfer of real estate, the action is barred by the statute of

frauds, citing a number of decisions, among them being *In Re Estate of Boller,* 173 Kan. 30, 244 P. 2d 678, to the effect that in order to take an oral contract for the transfer of land out of the statute of frauds the acts of performance relied on must have been done solely in pursuance of the contract and with a view to its being performed.

That such is the rule is conceded, but the trouble with defendants' argument is that it overlooks the specific finding by the court that the contract, as alleged, was actually made, and that the 1949 wills were executed in pursuance thereof, thus taking it out of the statute either by subsequent reduction to writing or by full performance. If the contract was in fact made, and the court found that it was, both parents performed the substance of the agreement by executing their wills. Mary D. further performed by dying, leaving her will in full force and effect; and Fred further performed by accepting the benefits under her will. Ordinarily, of course, full performance of a contract takes it out of the inhibitions of the statute (*In Re Estate of Hilliard,* 172 Kan. 552, 555, 241 P. 2d 729).

Because they are so closely interwoven defendants' remaining contentions, that the agreement between Fred and Mary D., if in fact any was made, did not amount to an agreement that each was to retain only a life estate in his or her own real estate, and that the court erred in its findings and conclusions, will be discussed together.

It is argued that neither of the separate wills of 1949 contained any express relinquishment of rights in the testator's own property during his or her own lifetime; that neither will contained any language contravening the provision inserted in every will, by the law itself, that a will operates and takes effect only upon the death of its maker, and that the most that can be said for the two wills is that they are some evidence of a general scheme and plan of the parents that after the death of both such property as remains is to pass to their children. In a very able and exhaustive brief counsel for defendants cite numerous authorities in support of their position. No attempt will be made to review or distinguish them. Perhaps it is safe to say that as abstract propositions of law statements found in certain of our decisions cannot be reconciled completely with statements found in other decisions. Each must be read and understood in connection with the particular facts and questions of the case. A few will be mentioned.

In *Menke v. Duwe, et al.,* 117 Kan. 207, 230 Pac. 1065, it was held

that a testamentary instrument jointly executed by husband and wife, which contained reciprocal testamentary dispositions of the separate property of each, was not necessarily contractual in character, either as a matter of fact or as a matter of law, and that, considering the will itself and the extrinsic evidence in connection therewith, nonexistence of a contract between the testators was proved.

In *Frontier Lodge v. Wilson,* 139 Kan. 75, 30 P. 2d 307, where the contractual feature of separate wills of husband and wife was involved, it was held that joint, mutual and reciprocal wills are revocable, the same as other wills, unless they are contractual; that evidence of conversations with others as to the plans and desires of the testators for the disposition of property by them, both before and after executing their wills, is not a substitute for proof of the existence and the terms and conditions of a contract necessary to the making of such wills contractual and, therefore, irrevocable. In that case it is to be noted that the trial court failed to find the existence of a contract between the testators.

In *National Life Ins. Co v. Watson,* 141 Kan. 903, 44 P. 2d 269, a husband and wife made a joint, mutual and reciprocal will in which each devised to the other a life estate in his or her property, with remainder to their children. Three years later the wife died and shortly thereafter the husband remarried. He himself held title to a certain tract which he and his second wife mortgaged. Default having occurred, foreclosure was instituted. The children of the testators intervened and set up their alleged respective interests under the joint will of their parents, which had been probated. The trial court, and, on appeal, this court, held that the joint will imposed no restriction upon the husband's right of alienation of property owned by him; that the mortgage was a first lien thereon; that the children had no legal or equitable defense to the foreclosure action, and that when the husband joined in the execution of the will of himself and his first wife he did not thereby intend to disable himself to exercise dominion over his own property.

Our attention also is directed to *In Re Estate of Adkins,* 161 Kan. 239, 167 P. 2d 618, and to *Berry v. Berry,* 168 Kan. 253, 212 P. 2d 283. In the Adkins case the joint and mutual will was on its face held to be contractual in nature, while in the Berry case the express language of the will declared it to be contractual.

Defendants rely heavily upon what was said in the Watson case, *supra*. However, the question there was the validity of a mortgage on the husband's property, given to secure a loan. Under that will the children of the testators were devised a remainder in the property of their parents, share and share alike. The opinion does not set out the factual background leading up to the execution of the will, and neither does it set out the court's findings, if any were made, other than to state the trial court found the will not to be contractual. In the case at bar plaintiff was specifically devised the tract in controversy, and the court specifically found that such devise was made pursuant to a contract and agreement. Also, the deed to Mary A. divested Fred of the property so as to render his will inoperative as to the tract. Furthermore, it is interesting to note that the opinion in the Watson case goes on to say that the joint will in question was still a perfectly good will and that upon the death of the testator the real estate of which he dies siezed "will pass to the seven children named in the fifth clause of the will, as both their parents intended."

Defendants make much of the fact that in the case of separate, mutual and reciprocal wills the presumption of their being contractual in nature is even less strong than where they are one instrument. As an abstract proposition perhaps there is some basis for that argument, but nevertheless, in the last analysis, in the absence of language in a will or wills concerning which there can be no doubt (*Berry v. Berry*, supra) the question really resolves itself into one of fact.

The chronological, physical facts of what happened here have already been related. The trial court heard testimony by numerous witnesses, including the attorney who prepared the deeds of 1944, 1945 and 1946 and the 1948 wills. It also heard testimony by the attorney who prepared the 1949 wills and the deed from Fred to Mary A. We will not detail this evidence. To do so would merely lengthen this opinion. We have examined it and are satisfied that the trial court, both from it and all of the other surrounding facts and circumstances inherent in the case, was justified in finding as it did. The existence of an agreement and its terms may be ascertained from a combination of written communications and the acts of the parties in connection therewith. (*Allen v. Bowling*, 173 Kan. 485, 249 P. 2d 679.) It is true that here there is no language in either will stating that they were contractual. On the other hand, the

whole course of dealing on the part of Fred and Mary D., from at least 1944 until her death, indicates clearly their entire plan for the disposition of their property after their deaths, and specifically that plaintiff ultimately was to receive the tract in controversy. Can it be said that the execution of the deeds over a three-year period, the concurrent execution of their mutual and reciprocal wills in 1948, and the concurrent execution, with only minor modifications, of the 1949 wills, were mere coincidences? We think not. In the nature of things such things just do not happen in the absence of mutual understanding and agreement concerning a settled purpose. As was said in *St. Denis v. Johnson*, 143 Kan. 955, 57 P. 2d 70,

"The will of 1919 did not just happen to be as it was. It was a duplicate of a will made in 1909, which was lost. The conduct of husband and wife indicates they had a settled purpose that disposition of their property at death should be governed by will of a definite kind; and reassertion of the terms of the earlier will confirmed the evidence afforded by the instrument, that it was the product of contract." (p. 961.)

we think the 1949 wills, being a reassertion, in substance, of the 1948 wills, are convincing evidence that they were the product of an agreement between the makers. (See also *Lewis v. Lewis,* 104 Kan. 269, 273, 178 Pac. 421.)

With specific reference to defendants' argument that the contract cannot be construed as limiting Fred to a life estate in his own property, we simply cannot agree. Holding, as we do, that Fred's will was the product of a contract and agreement, he is bound by its terms, even though the practical result thereof is that he is enjoined and prohibited from divesting himself of the tract during his lifetime. (See annotation at 169 A. L. R. 37 and 48.)

Other contentions of defendants have been considered, but require no discussion. The judgment of the lower court was eminently correct and it is in all respects affirmed.