No. 41,617

In the Matter of the Estate of James H. Miller, Deceased. (LUCILLE E. JACOBS, *Appellant,* v. EVA MAY REBENSTORF, *Appellee.*)

(348 P. 2d 1033)

Opinion filed January 23, 1960.

*I. H. Stearns,* of Wichita, argued the cause, and *E. P. Villepigue,* also of Wichita, was with him on the brief for appellant.

*William C. Farmer,* of Wichita, argued the cause, and *Paul V. Smith, Douglas E. Shay, Leo R. Wetta* and *James R. Schaefer,* all of Wichita, were with him on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: The sole question presented by this appeal is whether the joint will of James H. Miller and Elsie R. Miller, his wife, dated January 31, 1944, is a contractual will.

The joint will in question, omitting the attestation clause, reads:

### LAST WILL AND TESTAMENT

of

### JAMES H. MILLER and ELSIE R. MILLER

"We, James H. Miller and Elsie R. Miller, of Wichita, Kansas, being of full age and sound mind and memory, do make, publish and declare this to be our Last Will and Testament, hereby revoking any and all other or former wills or codicils made by us or claimed to have been made by us.

#### "First

"The one of us dying first hereby nominates and appoints the survivor to be Executor or Executrix, as the case may be, of this our Last Will and Testament, and direct that such Executor or Executrix be relieved from the giving of any bond, or the filing of an inventory herein. And in the event of the death of both of us, then we nominate and appoint our daughter, Lucille E. Jacobs, to be Executrix of this our Last Will and Testament, and direct that she be relieved from the giving of a bond or the filing of an inventory.

#### "Second

"We first direct that all our just debts and funeral expenses shall be paid from our said estate.

#### "Third

"In the event of our death at different times, the one of us dying first hereby gives, devises and bequeaths all of his or her property, both real and personal, unto the survivor of us to be his or hers absolutely.

#### "Fourth

"Upon the death of both of us, we give devise and bequeath all of our property, both real and personal, to Lucille E. Jacobs, to be hers absolutely.

#### "Fifth

"The foregoing bequests are made upon the following conditions, to-wit:

"Whereas, the undersigned, Elsie R. Miller, is the owner of the West Half (W ½) of the Southwest Quarter (SW ¼) of Section Eighteen (18), Township Twenty-nine (29), Range One (1) West, Sedgwick County, Kansas,

"Now Therefore, the undersigned, Elsie R. Miller, does hereby give, devise and bequeath said property mentioned in this section numbered Fifth unto our grandchildren, Robert Roy Jacobs and Marilyn B. Jacobs; that they have the net income from the same until the youngest of said grandchildren, to-wit, Marilyn B. Jacobs, reaches the age of twenty-one years. Then said property is to be and become the property of said named grandchildren, share and share alike absolutely, it being provided that said property shall not be sold or mortgaged until said Marilyn B. Jacobs reaches the age of twenty-one years.

"In WITNESS WHEREOF we have hereunto subscribed our names at Wichita, Sedgwick County, Kansas, this 31st day of January, 1944.

/s/ James H. Miller
/s/ Elsie R. Miller"

Elsie R. Miller died on the 8th day of September, 1946, and the disposition of her property, consisting of a quarter section of land near Haysville, Kansas, and an eighty-acre tract near Clearwater, Kansas, is not in controversy. These properties were owned separately by Elsie during her lifetime. It should be noted none of the property separately owned by James was mentioned in the joint will. The record does not disclose they owned any property as tenants in common or as joint tenants.

After the death of Elsie R. Miller, James H. Miller executed a will dated May 21, 1957. Thereafter, on the 11th day of March, 1958, James died and this subsequent will was admitted to probate. The probate court held the joint will dated January 31, 1944, was not a contractual will and the property of James H. Miller passed pursuant to the terms of the subsequent will, which insofar as James' estate is concerned revoked the will of January 31, 1944. It also found none of the beneficiaries named in the joint will had any claims against or interest in the estate of James by virtue of the will dated January 31, 1944. On appeal to the district court the facts, not being in controversy, were stipulated and the decision of the probate court was affirmed. Appeal has been duly perfected presenting to this court the question heretofore stated.

Elsie R. Miller and James H. Miller were married for many years. They had two children, Lucille E. Jacobs, a daughter, and Charles Miller, a son, who died before the joint will was executed. The son left a daughter surviving him by the name of Betty Colleen Dube. The grandchildren named in the joint will were the children of Lucille E. Jacobs.

By the subsequent will of James H. Miller, Betty Colleen Dube was bequeathed the sum of $2,000. Eva May Rebenstorf, who cared for James H. Miller the last eight years of his life, was given

a quarter section of land in Gray County, Kansas, which he owned in his own right. She was also given the monthly income for the rest of her natural life from an escrow agreement on residential property, which he bought and sold subsequent to the death of Elsie R. Miller. The rest of his property was given to Lucille E. Jacobs. (The record does not disclose what the remainder of his property was, except the remaining interest in the above real estate contract.)

On the death of James H. Miller, the joint will was filed for probate by Lucille E. Jacobs (appellant) alleging it to be the only valid will in existence. The subsequent will of James H. Miller was filed for probate by Eva May Rebenstorf (appellee) as one of the devisees and legatees thereunder.

We shall first consider the interpretation and construction of the joint will to determine what disposition the parties made of their property under the terms and provisions of their joint will. This becomes material only insofar as it may assist in resolving whether the joint will is contractual.

Where a court, either trial or appellate, is called upon to determine the force and effect to be given the terms of a will, its first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require the employment of rules of judicial construction to determine its force and effect. This court has long been committed to the rule that where from an analysis of the entire instrument no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions. (*Johnston v. Gibson,* 184 Kan. 109, 113, 334 P. 2d 348; *In re Estate of Freshour,* 185 Kan. 434, 345 P. 2d 689; and authorities cited in the foregoing cases.)

It is readily apparent, however, from a reading of the joint will above set forth that Paragraph Fourth thereof is ambiguous when read with Paragraph Third. The will therefore requires construction in the light of rules long since established by this court in cases where the terms and provisions of other wills have been regarded as indefinite and uncertain.

A rule for the construction of wills to which all other rules are subordinate is that the intention of the testator as garnered from all

parts of the will is to be given effect, and that doubtful or inaccurate expressions in the will shall not override the obvious intention of the testator. In construing a will, the court must put itself as nearly as possible in the situation of the testator when he made the will and from a consideration of that situation and from the language used in every part of the will, determine as best it can the purpose of the testator and the intentions he endeavored to convey by the language used. (*Beall v. Hardie*, 177 Kan. 353, 279 P. 2d 276; *In re Estate of Weidman*, 181 Kan. 718, 314 P. 2d 327; *In re Estate of Freshour*, supra; and authorities cited in the foregoing cases.)

The appellee relies upon *Holt v. Wilson*, 82 Kan. 268, 108 Pac. 87, which held:

"Where one part of a will clearly indicates a disposition in the testator to create an estate in fee it will not be restricted or cut down to any less estate by subsequent vague or doubtful expressions." (Syl. ¶ 1.)

The above rule in the *Holt* case, following *McNutt v. McComb*, 61 Kan. 25, 58 Pac. 965, and the doctrine there announced, has been disapproved repeatedly by subsequent decisions of this court. The disapproval of the *McNutt* rule and authorities relative thereto were thoroughly discussed in *Dyal v. Brunt*, 155 Kan. 141, 123 P. 2d 307. The *McNutt* rule has given way in the construction of a will to the rule that the testator's intention is to be gleaned from the entire text of the testament, and not by giving such controlling significance to any one paragraph as to render abortive other and subsequent provisions of the will, which likewise indicate part of the testator's purposes. In *Dyal v. Brunt*, supra, it was said the cases since 1914 demonstrate that the rule applied in *McNutt v. McComb*, supra, "has been disapproved repeatedly and that it has no more weight now than if at that time it had been specifically overruled. It is futile to rely upon it now." (p. 147.)

*Holt v. Wilson*, supra, was quoted in the case *of In re Estate of Charowhas*, 181 Kan. 322, 324, 310 P. 2d 947, upon a factual situation where the will was clear and unambiguous. It did not require assertion of the *McNutt* rule, which is no longer the law of this state. Language in the *Charowhas* case which may be construed as an assertion of the *McNutt* rule is disapproved.

Where there are definite and unambiguous expressions in a will, other expressions that are capable of more than one meaning must be construed, if possible, so as to harmonize them with the plain provisions. To ascertain the intention of the testator and the ex-

tent and character of the bequests and devises of his will, all provisions of the will must be read and construed together, and one provision must not be given controlling significance by ignoring other provisions of the will. (*Johnson v. Muller*, 149 Kan. 128, 86 P. 2d 569; *In re Estate of Cribbs*, 180 Kan. 840, 843, 308 P. 2d 111; and authorities cited therein.)

In *Regnier v. Regnier*, 122 Kan. 59, 251 Pac. 392, a paragraph in 28 R. C. L. 217 is quoted with approval as follows:

" 'In construing a will effect should be given to every word and clause if not inconsistent with the general intent of the whole will when taken together. It is presumed that every word is intended by the testator to have some meaning, and no word or clause in the will is to be rejected to which a reasonable effect can be given. Where two constructions are suggested, the one disregarding a word or clause of a will, and the other giving effect to the will as a whole, the latter must be adopted. No part of the instrument is to be discarded unless in conflict with some other part, in which case that part will be enforced which expresses the intention of the testator. Provisions apparently in conflict should be reconciled if this can be reasonably done.' . . ." (p. 62.)

Construing the joint will of James and Elsie upon application of the foregoing rules, we think Paragraph Fourth was intended to apply only in the event of their simultaneous death. Paragraph Third grants to the *survivor* of the two all the property *of the one dying first* to be his or hers (the survivor's) *absolutely*, subject only to the condition specified in Paragraph Fifth. Both Paragraphs Third and Fifth are clear and unambiguous standing by themselves. Paragraph Third is *prefaced* "In the event of our death *at different times*," and its provisions become effective only in this event. James and Elsie at the time they made their joint will were thinking of the contingencies that may arise concerning the sequence of their death. The *very next paragraph (Fourth) is prefaced* "Upon the death of both of us" and as to the sequence of death they must have been thinking of their simultaneous death. To construe Paragraph Fourth otherwise would render superfluous the use of the words "at different times" in Paragraph Third, and further cast uncertainty upon the meaning of other language in Paragraph Third. Construing Paragraph Fourth as a common casualty clause makes it consistent and reconcilable with Paragraph Third and the other provisions in the joint will.

It may be argued this construction adds the words "at the same time" to the words "Upon the death of both of us" in Paragraph Fourth. But by the same token to construe it otherwise would re-

quire the addition of the words "at different times," and this contingency has already been *specifically expressed* in Paragraph Third. If the wording of Paragraph Fourth is construed to mean more than that of a common casualty clause, then its meaning immediately becomes repugnant to Paragraph Third.

Conspicuous for its absence is any provision in the joint will, in the event of their death at different times, to cover the situation upon the death of the last to survive.

If "Upon the death of both of us" was intended to mean either "at the same time" or "at different times," irrespective of the time when both may die, and thereby ascribe a dual meaning to the expression, it would likewise be repugnant to Paragraph Third. Both paragraphs, Third and Fourth, give the property to the respective devisee and legatee without limitation by the same expression —"to be his or hers absolutely" and "to be hers absolutely." We do not think James and Elsie intended these expressions to mean anything other than a fee simple absolute title to the real property devised in the two paragraphs, nor do we think they intended these expressions to mean something different in each paragraph.

Upon the foregoing construction of the joint will, pursuant to Paragraph Third James would be entitled to all the property of Elsie upon her death which occurred first, except the eighty acres devised in Paragraph Fifth. As to the real property owned by Elsie, other than the eighty acres described in Paragraph Fifth, James would be entitled to the fee simple absolute title.

Since James and Elsie did not die at the same time, the contingency expressed in Paragraph Fourth did not occur, and this paragraph in the joint will is inoperative.

It must be remembered the property owned by James and Elsie, respectively, was the separate property of each of them, and the property involved in this appeal, and in the second will of James H. Miller, was property which he owned individually during his lifetime. (See, *National Life Ins. Co. v. Watson,* 141 Kan. 903, 44 P. 2d 269.)

Is the joint will of James H. Miller and Elsie R. Miller contractual?

The subject matter of a will contractual in character was thoroughly discussed in *Menke v. Duwe et al.,* 117 Kan. 207, 230 Pac. 1065. It was there said:

"Disposition of property by will is a proper subject of contract. If the contract be in substance or effect not to revoke a will, the will as a will is nevertheless revocable, without notice to anybody. It cannot then be probated as the

will of the person revoking it and, if the revocation be by means of a second will, the second will is probatable as the will of the testator. The revocation, however, breaches the contract, and the contract is enforcible in equity against the estate of the testator. A single instrument may have a double aspect—a will contractual in character, or a contract testamentary in character. As will it is revocable. As contract it is enforcible, if broken by revocation as will. Unless there be fraud, or a contract broken by revocation, there is nothing which equity may use as a basis of redress for revocation, no matter what the form of the revoked will, whether described as joint, or joint and mutual, or otherwise." (pp. 216, 217.)

(Reference is also made to *In re Estate of Adkins*, 161 Kan. 239, 167 P. 2d 618.)

The existence or nonexistence of an agreement or contract is in its very nature *a fact*. In the cases where wills have been held to be contractual, it will be found that either the wills expressly recited that they were contractual, or the fact that they were contractual was established by evidence. (*In re Estate of Pennington*, 158 Kan. 495, 148 P. 2d 516; and *Frontier Lodge v. Wilson*, 139 Kan. 75, 30 P. 2d 307. In each of the foregoing cases there were two wills which were mutual and reciprocal, but the rule is equally applicable to a joint and mutual will. In *Berry v. Berry*, 168 Kan. 253, 212 P. 2d 283, a husband and wife executed their joint and mutual will which by its very terms on the face of the instrument was declared to be contractual. On the other hand, in *Menke v. Duwe et al.*, supra, the testamentary instrument jointly executed by the husband and wife had provisions identical in the method of disposing of property but neither was made as a consideration for the other, and upon the extrinsic evidence presented the trial court's finding that the joint will was not contractual was supported by the evidence and sustained on appeal. The court there said the devisors joined in nothing. They made separate wills each as distinct from the other as if written on separate paper. There was thorough consideration and exact expression of intention, but nothing more. If the instrument was the result of contract, under which the making of each will was consideration for making the other, *it was necessary to establish that fact by evidence*. In the opinion it was said:

". . . The result is, the instrument itself, although declared to be 'our last will and testament,' although containing reciprocal testamentary dispositions, and although jointly executed, *does not compel the inference that it was contractual in character*. Furthermore, if the paragraph referred to had been omitted, and *an inference of contract were strongly indicated, existence*

*of a contract pursuant to which the instrument was executed, would never-theless be a matter of fact, to be established* according to the rules stated . . ." (p. 220.) (Emphasis added.)

Among the rules stated it was said: To establish an agreement for mutual wills there must be full and satisfactory proof of the agreement, which cannot be supplied by presumption. Merely to argue that wills are contractual because they are mutual begs the question. The contractual character of a will is a *fact to be established by evidence,* showing that such was the understanding and the deliberate agreement.

It is essential to the validity and enforcement of a contract for the execution of wills containing bequests which are reciprocal between the parties that the contract be definite, certain and unequivocal as to the parties, the subject matter and the considerations. (169 A. L. R. 30.)

The record in the instant case is wholly devoid of any extrinsic evidence establishing a contract between the Millers. Therefore, if the court is to find that James and Elsie made a contract, the same must be determined from the terms and provisions of the joint will itself. While the trial court found the will not to be contractual, the Supreme Court is not bound by the finding, since the evidence from which the finding was made is wholly written and documentary in form. Under these circumstances, the reviewing court must decide for itself what the facts establish, substantially as it would if the case was originally in this court, for the trial court has no better opportunity to weigh the evidence than a court of review with the same evidence before it. (*Goldberg v. Central Surety & Ins. Corp.,* 145 Kan. 412, 65 P. 2d 302.) Similarly, the reviewing court should make the determination for itself as to the interpretation to be placed upon documentary evidence. (*Hill v. Hill,* 185 Kan. 389, 345, P. 2d 1015.)

If the testators in the instant case made a contract, the court must find in the joint will the necessary elements of a contract. There must be an agreement, legal consideration, mutuality of agreement and it must not be so vague and uncertain that the terms thereof are not clearly ascertainable.

Reciprocal provisions in mutual wills are insufficient to make the will contractual. The general rule is that the execution of a joint will is not of itself sufficient evidence of an enforceable

contract to devise between the testators, so as to make the contract enforceable in equity. (*In re Estate of Pennington*, 158 Kan. 495, 500, 148 P. 2d 516; and *Menke v. Duwe et al.*, supra.)

In the *Pennington* case the court quoted from a Georgia case, *Clements v. Jones*, 166 Ga. 738, 144 S. E. 319, as follows:

" 'The general rule is, that if two persons execute wills at the same time, either by one or two instruments, making reciprocal dispositions in favor of each other, the mere execution of such wills does not impose such a legal obligation as will prevent revocation. (*a*) Agreements to make wills are not established merely because two persons simultaneously make reciprocal testamentary dispositions in favor of each other, when the language of such wills contains nothing to the effect that the instruments are the result of a contract.' (Syl. ¶ 2.)" (pp. 500, 501.)

The appellant relies on language used in the case of *Lewis v. Lewis*, 104 Kan. 269, 178 Pac. 421, as follows:

". . . The defendant says that there was no evidence to show that T. W. Lewis and Betsy A. Lewis ever entered into any contract to make the will, and that there was no finding of the court that such a contract was made. *How could such a will be voluntarily executed if there was no agreement or understanding that it would be made? The will itself, its terms, and its execution, are evidence that such a contract was made.* (*Nelson v. Schoonover*, 89 Kan. 388, 392, 131 Pac. 147; *Baker v. Syfritt*, 147 Iowa 49; *Bower v. Daniel*, 198 Mo. 289, 320; *Frazer v. Patterson*, 243, Ill. 80; *Campbell v. Dunkelberger*, 172 Iowa 385, 390; *Larrabee v. Porter*, 166 S. W. 395 [Tex. Civ. App. 1914].)" (p. 273.) (Emphasis added.)

In *Berry v. Berry*, supra, the *Lewis* case was said to be authority for the proposition that in the very nature of things a joint and mutual will is contractual. But the court recognized there was no occasion to speculate as to the contractual nature of the will in the *Berry* case since the parties executing the will specifically declared it to be contractual.

General statements of the law must be tempered by the facts which give rise to their pronouncement. The mutual and reciprocal joint will of a husband and wife in the *Lewis* case spelled out *in great detail* the various provisions with respect to the contingencies that might arise. Reference is made to the provisions of the will at page 270 of the opinion. Among the provisions is Paragraph Second which reads:

"It is the will and desire of each of us and the mutual wish and desire of both of us that on the death of either of us all the property of the deceased party, whether real, personel or mixed, shall descend to and become the sole and separate property of the surviving party for his or her use and benefit *so long as the survivor shall live.*" (Emphasis added.)

Paragraph Third makes provision to dispose of the property upon the death of the survivor.

The foregoing language in the *Lewis* case is rather broad and although the case was decided prior to the decision in *Menke v. Duwe et al.*, supra, it was not discussed in the opinion. This was noted as *strange* in the case of *In re Estate of Adkins*, 161 Kan. 239, 247, 167 P. 2d 618.

It may be observed under the rule as stated in the *Lewis* case it made specific reference to, *"the will itself, its terms."* The case, in effect, holds that where a joint and mutual will is executed by a husband and wife *the will itself and its terms* may be taken into consideration as *circumstantial evidence* upon which to base a finding that the will is contractual. This is not to say that the execution of a joint and mutual will compels such an inference.

Similarly, in the case of *In re Estate of Adkins*, supra, a joint will executed by a husband and wife by its terms and provisions went into considerable detail. It specifically gave a *life estate to the survivor* and made provision for the remainder after the death of the survivor. (Reference is made to the will quoted at pages 241 and 242.) The court there simply concluded "On its face it showed that it was contractual." Two members dissented on this point.

Separate wills, which were mutual and reciprocal in their bequests and devises, were executed by a husband and wife in *Eikmeier v. Eikmeier*, 174 Kan. 71, 254 P. 2d 236. Each left a *life estate to the other* and made provision for the remainder after the death of the survivor. It was held the trial court did not err in the admission of evidence and in finding that the separate mutual and reciprocal wills were contractual. Syllabi ¶¶ 1 and 2 read:

"Extrinsic evidence is admissible in connection with the instruments themselves to show that separate wills, which are mutual and reciprocal in their bequests and devises, were executed in pursuance of an agreement between the testators, notwithstanding the absence of recitals in the wills designating or referring to such agreement. Such evidence may consist of writings, acts and declarations of the parties, testimony of other persons, and evidence of all the surrounding facts and circumstances.

"The rule that parol evidence is never admissible to change or vary the terms and provisions of an unambiguous will does not render inadmissible extrinsic evidence that a will was executed pursuant to an agreement with another person for the execution of wills bequeathing and devising property to the survivor for life and providing that certain third persons should take on the death of the survivor."

Many of the cases heretofore cited are reviewed in the *Eikmeier* case.

A reading of the joint and mutual will of James and Elsie in the instant case shows it to be wholly lacking in any language which would indicate that it was contractual. If it was the intention of the parties to have a contract, it would have been an easy matter to have worded the will to express such an intention. How can it be said that James and Elsie contracted to leave their property to Lucille upon the death of the survivor when the will itself contains no provision to cover this eventuality? Paragraph Fourth has been construed to have application only where the death of James and Elsie was simultaneous and this event did not occur. Upon the death of Elsie, James was free to make a disposition of his property by will or otherwise.

Even assuming for purposes of argument, without conceding, the joint will of James and Elsie was contractual, under the foregoing construction of the joint will its obligations were fulfilled. The provisions of the subsequent will of James could be enforced upon its admission to probate, since the terms of the contract would not be violated. (*Nelson v. Schoonover*, 89 Kan. 388, 131 Pac. 147.)

The appellant relies upon *Beall v. Hardie*, 177 Kan. 353, 279 P. 2d 276, wherein the substance of the provisions of a joint will between the husband and wife were similar to those in the instant case up to a certain point. In each case the one first to die left the property absolutely to the survivor. But there the similarity ends. In the *Beall* case Paragraph Fifth was construed to give the surviving party a life estate. There, however, Paragraph Sixth gave the survivor a power of disposal and it further provided for the disposition of the remainder after the death of the survivor. The joint will was also specifically referred to by its terms as a *"will and covenant."* All these features clearly distinguish the *Beall* case. (Reference is made to the joint will in the *Beall* case at pages 354 and 355.) The will was held to show on its face that it was contractual and was construed to give the survivor a *life estate* with a power of disposition.

The word "conditions" used in Paragraph Fifth of the Miller will has reference to the conditions upon which the provisions of Paragraphs Third and Fourth were dependent and not to the

provisions of a contract. It cannot be said the use of the word "conditions" in the Miller will is similar to the use of the word "covenant" in the *Beall* case.

In conclusion we find the joint and mutual will of James H. Miller and Elsie R. Miller was not contractual and the trial court did not err in so finding.

The judgment of the lower court is affirmed.

PRICE, J., concurs in the result.