No. 45,188

In the Matter of the Estate of Wilma E. Wade, Deceased. (Loren Wade, Lena North and Jessie Lefman, *Appellants*, v. H. E. DeTar, Frank Burt, Ruby Burt, Jimmy Byford, Janette Byford, *Appellees*.

(449 P. 2d 488)

Opinion filed January 25, 1969.

*George K. Melvin* and *Milton P. Allen*, both of Lawrence, argued the cause, and *Gerald L. Cooley* and *Jerry L. Donnelly*, both of Lawrence, were with them on the briefs for the appellants.

*Olin K. Petefish* and *Peter K. Curran*, both of Lawrence, argued the cause, and *James L. Postma*, of Lawrence, were with them on the briefs for the appellees.

The opinion of the court was delivered by

Kaul, J.: The question presented in this appeal is whether the joint and mutual will of Erman Clinton Wade and Wilma E. Wade is contractual.

The evidence consisted of the testimony of the two witnesses to the will and that of Jacob E. Wade, the scrivener and a brother of Erman.

The findings of fact made by the trial court are not disputed by the parties. The position of appellants on appeal is that the trial court, after finding that Erman and Wilma agreed to make a joint and mutual will, erroneously concluded that the will was not contractual.

Following the trial court's decision the appellants filed a motion for a new trial in which they stated that, although the trial court correctly found the facts from the undisputed evidence produced, the decision rendered was inconsistent therewith. Appellants contended in their motion, as they do on appeal, that the findings

recited in findings No. 1 compelled a conclusion that the joint will was contractual, the minds of the parties having met and there having been ample consideration for the agreement reached. Appellants also claimed that costs should be taxed against the estate, irregardless of which party prevailed.

The trial court overruled appellants' motion for a new trial, except as to costs. Thereafter appellants perfected this appeal.

The factual background is set out and the issue on appeal is framed by the findings and conclusions of the trial court which are recited in full as follows:

"MEMORANDUM OF DECISION

"Filed March 29, 1967

"This appeal from the Probate Court was tried on January 18, 1967, at the conclusion of which trial counsel were given leave to file briefs within 30 days. Such briefs were filed on February 17, 1967, since which date the matter has been under advisement for decision.

"The sole issue presented by the appeal is whether or not the joint and mutual will of Erman Clinton Wade (hereinafter referred to as H) and Wilma E. Wade (hereinafter referred to as W) is contractual.

"The evidence upon which the appeal was submitted consists of the testimony of Densil Cox and Verona Cox, who signed the will as witnesses; the testimony of Jacob E. Wade (hereinafter referred to as Jacob), who is a brother of H; the Probate Court file of the Estate of H; and the transcript from the Probate Court in connection with the Estate of W; from which Estate this appeal originated.

"From such evidence the facts essential to a disposition of said appeal are found to be as follows:

"1. Some weeks prior to January of 1952 H had suffered a stroke and was thereafter confined to his bed most of the time. On January 16, 1952 knowing that Jacob was in town, W, at the request of H, called to ask that Jacob come to the home of H and W. Upon Jacob's arrival H said that he wanted a will drawn so that all of their property would go to H's brothers and sisters. W did not want this and said that some of the property should go to her relatives. In response to W's remark H asked her how much she thought should go to her kin and she said one-fourth, to which request H agreed and asked Jacob to prepare a will.

"2. Jacob, who is not a lawyer but who had prepared wills for a few of his neighbors, agreed to prepare a will as requested by H but had to go to a local print shop to secure a form before he could do so. Upon his return, Jacob filled out the will form, had H and W sign it and told them they would need to get two witnesses to sign the will, following which Jacob left the home.

"3. W was not too happy about having signed the will but so as not to unduly upset H, she drove to Baldwin to the home of the Coxes the next day and at her request they came to the home of H and W in the afternoon to witness the will. At the time the Coxes arrived W was in the kitchen but

she had gotten H up and he was sitting in a chair in the living room. W took the Coxes into the living room and handed them the will, and after reading at least a part of the will Densil Cox and Verona Cox signed as witnesses. The Coxes were tenants of a farm owned by H and W and after visiting briefly with H, they left.

"4. The will in question reads as follows:

"KNOWN ALL MEN BY THESE PRESENTS, And to all whom these presents may concern, be it known that We Erman Clinton Wade and Wilma E. Wade, of the County of Douglas and State of Kansas, being of mature age and sound mind, and realizing the uncertainty of life and the certainty of death, and being desirous of making full and complete provision for the final settlement and disposition of all of my worldly goods and possessions after my dissolution, do hereby make and declare this my last will and testament.

"First, That in the event of the death of one of the above named Testators all property, both Real estate, Personal, all moneys or any other values tangible or intangible shall be the sole property of the one who survives. To be used at their own discretion.

"2. That we desire that Jacob E. Wade shall be appointed as administrator of the estate.

"3. That upon the death of both above named Testators the remaining property shall be disposed of firth (sic), three-fourths of said property shall be divided on an equitable basis to the brothers and sisters of Erwin Erman Clinton Wade and one fourth to those of nearest relation to Wilma E. Wade.

"IN WITNESS WHEREOF, We have this Sixteenth day of January A. D. 1952, signed, sealed and declared this my last will and testament, and do hereby revoke all other wills by me made.

"/s/ Erman Clinton Wade
"/s/ Wilma E. Wade

"The signatures to the foregoing will of the said Erman Clinton Wade and Wilma E. Wade was acknowledged by us in our presence to be their act and deed and we have attested the same in their presence.

"/s/ Densil Cox
"/s/ Verona Cox
"WITNESSES

"January 16, 1952

"5. H died on April 10, 1952 and on January 22, 1953 W filed a petition for administration of his estate on the theory that H had died intestate because of the will of January 16, 1952 was not subscribed, attested or acknowledged as his will. To this petition the brothers and sisters of H (who shall herein- after be referred to as appellants) responded by contending that the will of January 16, 1952 was the will of H and should be admitted to probate as such. After due hearing the will was admitted to probate as the will of H. W elected to take under such will by failing after due notice to elect otherwise, and Jacob, who was named as administrator in the will, was appointed and qualified as Executor. In connection with the final settlement of H's Estate, appellants sought to have the will interpreted as being contractual and as giving W a life estate with the remainder over as provided by clause 3 of the will. W, on the other hand, sought an interpretation which would give her the fee and

would hold that the will was not contractual. The judgment of the Probate Court is expressed in its Memorandum Decision which reads as follows:

"Clause 1 of the Wade Will in effect creates a joint tenancy as to all property owned by the Wades' so that on the death of either, all of said property becomes the sole property of the survivor in fee. Clause 3 of the Wade Will then becomes the will of the survivor.

"Or, to put it in another way, clause 3 of the Wade Will is not a limitation of the fee granted by both of the Wades' to the survivor of them in Clause 1, but rather it is the Will of the survivor.

"The question as to whether or not the joint will in question is contractual so as to bind the survivor's property to the conditions of clause 3, must await the death of the survivor. Should she make another Will in which the property remaining in her hands at the time of her death is devised and bequeathed in a manner contrary to the terms of clause 3 of the joint will, then those concerned could try to establish their position relative to the joint will being contractual at such time as such other will was offered for probate. If on the other hand Mrs. Wade should die without making another will, the joint will could then be probated as her will and no question as to it being contractual could be raised. In other words, Mrs. Wade has not yet done anything to breach a contract if indeed one does exist.

"It would follow that the property Erman Clinton Wade, Deceased should be assigned to his widow, Wilma E. Wade.

"Done and signed at Lawrence, Kansas January 7, 1955.

"/s/ Frank R. Gray
"Probate Judge

"No appeal was taken from such judgment.

"6. On August 10, 1962 W executed a will in which she revoked all prior wills and in which the disposition of her estate was not as provided by clause 3 of the joint will of January 16, 1952. W died on October 30, 1965. On November 8, 1965 the person named as Executor in the 1962 will filed a petition for its probate and on November 29, 1965 appellants filed a petition for probate of the 1952 will alleging it to be a contractual will. After due hearing the Probate Court admitted the 1962 will as the last will of W and found that the will of 1952 was not contractual, from which latter judgment appellants appealed.

"From the foregoing facts the following stated conclusions of law are made:

"1. Although clause 3 of the 1952 will was the will of W after the death of H, there is nothing in the scant evidence of the conversation between H, W, and Jacob nor in the will itself which indicates an agreement between H and W that the survivor of them was bound by clause 3. The elements requisite to a contractual will are well stated and analyzed in the case of *In re Estate of Miller*, 186 K. 87 at p. 95.

"2. There is nothing in the will or the extrinsic evidence which indicates an agreement to create a vested remainder in anyone after the death of the survivor of H and W. See for example: *Zabel v. Stewart*, 153 K. 272.

"3. The 1952 will was revocable (169 ALR 22) and by her will of 1962 W revoked the 1952 will.

"It follows that judgment should be entered in accordance with the foregoing findings and conclusions.

"The clerk is therefore and hereby directed to enter the following judgment: The will of January 16, 1952 signed by Erman Clinton Wade and Wilma E. Wade is not contractual and was revoked by the last will of Wilma E. Wade dated August 10, 1962. The costs of this appeal are assessed against appellants. All in conformity with the Court's Memorandum of Decision filed this date.
"Signed and dated at Lawrence, Kansas on March 29, 1967.

"/s/ Frank R. Gray
"District Judge."

Because of the manner in which the question on appeal is presented the evidence is not abstracted. The record consists of the trial court's memorandum of decision, appellants' motion for a new trial, the ruling thereon, as heretofore noted, and two statements from the record, one of which concerns the inventory and appraisal of Erman's estate and the other is an estimate of Wilma's estate following her death.

Even though some irregularities are indicated by the findings of the trial court apparently no objections, as to the form or execution of the joint will, were lodged at any stage of the proceedings. No point is made as to whether appellants chose the appropriate remedy in probate court by offering the 1952 will as a contractual will in opposing the petition for the probate of Wilma's 1962 will. The procedural problem referred to was before this court in *In re Estate of Adkins,* 161 Kan. 239, 167 P. 2d 618, wherein the question whether the prior joint will should be enforced as a contract was recognized as an equity question, but it was noted that probate courts had received equity powers under G. S. 1943 Supp., 59-301(12), now K. S. A. 1968 Supp. 59-301(12).

Not having the benefit of the original joint will, or a reproduction thereof, we are unable to accurately distinguish the portions written by the scrivener from those already printed in the will form. Lack of this information is of no moment, however, since we are not called upon to determine from the face of the will whether it was the product of a contract but only with the simple question as to whether the trial court's findings of fact compel a conclusion that the joint will was contractual.

We shall approach the problem by first examining the findings of fact, particularly finding No. 1 in which the facts crucial to a determination of this appeal are set out.

It is established in finding No. 1 that Erman being in ill health and having no direct heirs desired to make a will bequeathing his and Wilma's property to his brothers and sisters. Wilma declined

Erman's proposition and replied that some of the property should go to her relatives. In response to her refusal and counterproposal, Erman inquired of Wilma how much she thought should go to her kin and she replied one-fourth. The trial court found that Erman *agreed* to Wilma's request and asked Jacob to prepare a will. Clause No. 3 of the will expresses the agreement of the parties.

The facts disclose an offer by Erman, a rejection and counteroffer by Wilma followed by an acceptance by Erman. The counteroffer by Wilma that she would agree to a division of three-fourths to Erman's brothers and sisters and one-fourth to her relatives obviously was designed as the basis of a bargain or representation intentionally made to induce, and which did induce, an acceptance on the part of Erman. We believe the facts clearly indicate that Erman and Wilma had arrived at a settled purpose that disposition of their property at death should be governed by a will expressing their agreement. The minds of the parties met, their mutual promises were sufficient consideration to support the agreement and the terms thereof are clearly ascertainable.

In conclusion No. 3 the trial court indicates that it is necessary to establish a further agreeement between Erman and Wilma that the survivor of them was bound by clause No. 3. In effect such a holding would require proof of an additional agreement that the parties would be bound by the agreement already made as to the disposition of their property on the death of the survivor. We know of no authority, and are cited to none, sustaining such a position with respect to contractual wills. A mere agreement to make a joint will does not necessarily become an irrevocable contract, but such an agreement is not before us. The contract established by the evidence here consisted of more than merely an agreement to make a will, it included the mutual promises of the parties as to the disposition of their property on the death of the survivor. An agreement to be bound is inherent in such a contract.

Controversies pertaining to the contractual character of joint wills are generally decided on the particular facts of each case and therefore are of limited value as precedents; however, certain guidelines are well-established and should be noted.

Broadly stated, the general rule appears to be that a joint and mutual will, executed pursuant to an agreement based on a valuable consideration, is contractual as well as testamentary and becomes an irrevocable obligation on the part of the surviving testator upon

the death of the other party testate under a will which is in accord with the terms of the agreement. (97 C. J. S., Wills, § 1367 [c], p. 304; 57 Am. Jur., Wills, § 712, p. 482.)

In this state the dual aspect of a will executed pursuant to an agreement appears to have been first recognized in *Nelson v. Schoonover*, 89 Kan. 388, 131 Pac. 147, wherein it was held:

"A will executed under an agreement founded upon a valuable consideration is contractual as well as testamentary. In the latter aspect it may be revoked without the consent of the beneficiary, but not in the former. . . ." (Syl. ¶ 3.)

*Nelson v. Schoonover*, supra, did not involve a joint will. However, the case was followed a month later by the decision in *Carle v. Miles*, 89 Kan. 540, 132 Pac. 146. This case dealt with separate, mutual and reciprocal wills executed pursuant to a contract. The will of the first deceased testator was attacked on the ground that such an instrument could not be recognized as a will since it was against public policy that wills should be irrevocable. The argument was rejected and the wills were upheld. In the opinion the rule noted in 136 Am. St. Rep. 592 was cited as authority. The rule referred to sets out that a fixed obligation results when mutual and reciprocal wills are executed pursuant to an agreement of the parties and in substance amounts to the general rule which we have stated.

Although the cases reflect some confusion by reason of variances in use of terms, the rule has been consistently followed in this jurisdiction since the decision in *Miles*.

The holding in *Miles* is noted with approval in *Lewis v. Lewis*, 104 Kan. 269, 178 Pac. 421, wherein it was further stated:

"There is some confusion in the authorities concerning the power of one of the parties to a mutual and reciprocal joint will to revoke it; but the rule supported by the better reasoning and by the weight of authority is that if such a will has been made and one of the parties thereto dies and the other accepts benefits thereunder, the survivor cannot thereafter revoke it. . . ." (pp. 273, 274.)

It was also noted in *Lewis* that, even though the testimentary part of the instrument had been revoked, the contractual part would be enforced.

In *Eikmeier v. Eikmeier*, 174 Kan. 71, 254 P. 2d 236, the evidence established that the separate mutual and reciprocal wills of a husband and wife were the product of an agreement. In an action to set aside a conveyance by the surviving husband, it was stated:

". . . Holding, as we do, that Fred's will was the product of a contract and agreement, he is bound by its terms, even though the practical result thereof is that he is enjoined and prohibited from divesting himself of the tract during his lifetime. . . ." (p. 81.)

In *West v. Sims,* 153 Kan. 248, 109 P. 2d 479, the action was to enforce an oral contract, however, the factual background is quite similar to that of the instant case, it was held:

"In an action to enforce an oral contract to bequeath property, including real estate, where a man and wife made an oral contract to bequeath the property of each to the survivor, and at the death of the survivor to a third person, and a joint will was made to that effect, and after the death of the wife the husband destroyed the will, *held,* that the contract was clear in its terms, was established by clear and convincing evidence, was supported by a good consideration and its enforcement was equitable." (Syl. ¶ 1.)

Although the court has consistently held that a joint, mutual and reciprocal will is contractual as well as testamentary where it has been shown to be the product of an agreement, difficulty has been encountered as to the proof required of the existence of an agreement. While the question of the validity or legality of the agreement is one of law it has become firmly established that whether a will was the product of an agreement is a question of fact. (*In re Estate of Miller,* 186 Kan. 87, 348 P. 2d 1033, and *Frontier Lodge v. Wilson,* 139 Kan. 75, 30 P. 2d 307.) In other words, the ultimate determination becomes a matter of proof as to whether the will was the result of a contract unless the will expressly recited that it was contractual as in *Berry v. Berry,* 168 Kan. 253, 212 P. 2d 283.

The agreement must be established by full and satisfactory proof which cannot be supplied by a presumption stemming from the mere fact that the will was mutual. (*In re Estate of Miller,* supra, *Menke v. Duwe* et al., 117 Kan. 207, 230 Pac. 1065.)

Proof may be developed by extrinsic evidence, as in the instant case, or the will itself and its terms may be taken into consideration as circumstantial evidence upon which to base a finding whether or not the will is contractual. The subject is discussed in depth in *In re Estate of Miller,* supra. The reader interested in further perusal is referred to "Joint and Mutual Wills" by Justice William A. Smith in Kansas Judicial Council Bulletin, April 1946, pp. 3 to 9, incl.

It will suffice to say here that the facts, as found by the trial court, show that the instant will was the product of a contract, definite and certain in its terms, and unequivocal as to the parties.

At this point it should be noted that in this jurisdiction it is well-established that the rule barring parol evidence, offered to change or alter the terms of an unambiguous will, does not render inadmissible extrinsic evidence that a will was executed pursuant to an agreement. (*In re Estate of Tompkins*, 195 Kan. 467, 407 P. 2d 545, and *Eikmeier v. Eikmeier*, supra.)

Appellees rely heavily on our recent holding in the case of *In re Estate of Miller*, supra. In *Miller* a husband and wife executed a joint and mutual will, leaving all their property to the survivor absolutely, conditioned upon a provision whereby the wife devised eighty acres of her separate property to named grandchildren and by another provision left all their property to their daughter upon the death of both of them, which was construed to be a common casualty clause. The parties died at different times and it was held that the Fourth paragraph of the will providing for disposition "Upon the death of both of us" was ambiguous when read with the Third paragraph of the will which provided for disposition to the survivor in the event of the deaths of the testators at different times. Since James H. Miller and Elsie R. Miller did not die at the same time the contingency expressed in the Fourth paragraph did not occur. Inasmuch as the Fourth paragraph was inoperative, James Miller, being the survivor, was free to make a disposition of his property by will or otherwise.

It was further stated in the opinion "The record in the instant case is wholly devoid of any extrinsic evidence establishing a contract between the Millers."

The facts and circumstances in *Miller* are readily distinguishable from those present in the instant case. First, it was necessary to construe the will in *Miller* to give force and effect to the provisions pertaining to the sequence of deaths which made inoperative the provision for disposition on the death of the survivor; secondly, one of the parties willed property individually owned by her to a specific beneficiary; thirdly, and perhaps most significant of all no extrinsic evidence was received. None of these circumstances prevail in the case at bar.

Appellees direct our attention the case of *Zabel v. Stewart*, 153 Kan. 272, 109 P. 2d 177, cited by the trial court in conclusion No. 2. They argue that it supports the proposition that there is nothing in the will or extrinsic evidence which indicates an agreement to create a vested remainder in anyone after the death of the survivor.

The *Zabel* case involved a joint will in which the makers expressly reserved "the right to change, alter or annul the same at any time they may desire." The will in *Zabel* futher bequeathed and devised only that part or portion of the property owned by testators at the death of the survivor which was undisposed of by deed, gift or *will* (emphasis supplied.). The *Zabel* case is not in point either with respect to the terms of the will or the extrinsic evidence.

Appellees also cite the case of *Menke v. Duwe et al.*, supra. The real import of the holding in *Menke* is a reiteration of the rule that the contractual character of a will is a fact to be established by the evidence. It is pointed out in the opinion that in the absence of, or contradiction by, extrinsic evidence the court must find in the will itself the elements necessary to establish the fact that a contract existed and that the mere execution of a joint will is not of itself sufficient evidence of an enforceable contract. A warning is sounded against judicial declarations that a will is contractual merely because it is mutual in form. The necessary elements were not found in the *Menke* will and the extrinsic evidence established the nonexistence of a contract. The last paragraph of the opinion reads:

"Turning to the extrinsic evidence, nonexistence of a contract making revocation by Mrs. Menke after her husband's death wrongful, was proved both by plaintiff and by defendants, and the case stands as a warning against dogmatic judicial declaration that a certain form necessarily expresses a certain reality." (p. 220.)

In the case of *In re Estate of Tompkins*, supra, a joint and mutual will was held to be contractual on its face because the language used clearly indicated the elements establishing the fact of an agreement by the testators as to the terms and provisions of their will and the intention that they each be bound. Although extrinsic evidence, tending to prove a contract, was received in *Tompkins* it was described as unnecessary for the reason the will was contractual on its face. As in *Beall v. Hardie*, 177 Kan. 353, 279 P. 2d 276, the language used in the will supplied the evidence necessary to establish that the will was the product of a contract.

While disposing language in the instant will is quite similar to that used in the *Tompkins* will, contractual elements are not so clearly discernible, since an awkward use of the words, in particular "my," is found in the Wade will, resulting from the unskilled efforts of the layman (Jacob) in attempting to reflect the expressions of

the testators in the preprinted will form. Nevertheless, it cannot be said that any expresssion of the will is contrary to the agreement of the testators, as it was found by the trial court.

In the Wade will there is no language stating it to be contractual, nor does the language used supply with clarity the evidence of an underlying obligation. On the other hand, the facts, as found from uncontradicted evidence, show that Erman and Wilma bargained until they reached a definite agreement as to the disposition of their property, and they expressed such disposition in the identical portions agreed upon in their joint and mutual will.

In conclusion we find the joint and mutual will of Erman and Wilma Wade was contractual and the trial court erred in concluding otherwise.

The judgment is reversed.